EMMA GRANT WEST ET AL V. LEOLA P. HAPGOOD ET AL.
No. 8107.

EMMA GRANT WEST ET AL V. BRYANT EDWARDS ET AL.
No. 8108.

Decided October 27, 1943.
Rehearing overruled November 24, 1943.
(174 S. W., 2d Series, 963.)

*Ben M. Terrell, Thompson, Walker, Smith & Shannon,* and *Hugh B. Smith,* of Fort Worth, for petitioners.

The Court of Civil Appeals erred in holding that the petitioners, Emma West et al, were barred by the twenty-five years statute of limitation because the undisputed evidence showed that Worsham and those claiming under him had never prospected for or produced any minerals from the land and therefore never held peaceable and adverse possession to said minerals. They had only used the land for ordinary ranch purposes. Wallace v. Hoyt, 225 S. W. 425; Armstrong v. Humble Oil & Refining Co., 145 S. W. (2d) 692; Lyles v. Dodge, 228 S. W. 316; Allison v. California Petroleum Corp., 158 S. W. (2d) 597; Henderson v. Chesley, 229 S. W. 573.

*Leslie Humphrey* and *Bullington, Humphrey & Humphrey*, *Otis E. Nelson* and *Joe B. Hatchitt*, all of Wichita Falls, *Vincent Stine, Stine, Bunting & Stine* and *Clyde Suddath*, all of Henrietta, *Robert B. Burgess* and *E. H. Foster*, both of Amarillo, *H. S. Garrett, David W. Stephens, W. E. Allen* and *P. O. Settle*, all of Fort Worth, *Homer B. Latham*, of Bowie, *Robert B. Thrasher*, of Austin and *Leslie Niell*, of Tyler, for various respondents.

On the theory that the deed and the releace were both parts of the same transaction and both together conveyed the muniment of title whereby it vested in W. B. Worsham the title in its entirety to the land, and any imperfections that might have existed at that time have, after a period of sixty years, been cured by the Statute of limitation. Thomas v. Southwestern Settlement & Develop. Co., 132 Texas 413, 123 S. W. (2d) 290; Rio Bravo Oil Co. v. McEntire, 128 Texas 124, 95 S. W. (2d) 381, 96 S. W. (2d) 1110; 14 Texas Jur. 926.

MR. JUDGE SMEDLEY of the Commission of appeals delivered the opinion for the Court.

These two cases, although separately filed and docketed in the trial court and in both appellate courts, were tried together and were submitted together on appeal with one statement of facts. The controlling facts and questions of law in the two cases are the same. Accordingly, here, as in the Court of Civil Appeals, one opinion is written and the cases are treated herein as if they were one case.

Petitioners sued respondents for the title and possession of the oil, gas and other minerals in thirty-three tracts of land, being blocks of the Marion County school land in Clay County, and containing in all about 5,280 acres. After the return of a verdict favorable to respondents, the trial court rendered judgments that petitioners take nothing and the judgments were

affirmed by the Court of Civil Appeals, Chief Justice McDonald dissenting. 169 S. W. (2d) 204.

Although a number of questions were presented in the Court of Civil Appeals, its judgments affirming those of the trial court were based solely upon its conclusions that respondents and their predecessors had acquired title to the minerals in the land under the two twenty-five years statutes of limitation. Article 5519, Revised Civil Statutes of 1925 as amended by Chapter 250, Acts Regular Session, 40th Legislature, page 369; Chapter 30, Acts 5th Called Session, 41st Legislature, as amended by Chapter 169, Acts Regular Session 42nd Legislature, page 288, Article 5519a, Vernon's Annotated Civil Statutes.

Prior to September 11, 1882, the legal title to the lands in controversy was in Conrad N. Jordan and Yates Ferguson, both of New York, to whom they had been conveyed as trustees for the beneficial owners, a partnership known as Consolidated Copper Syndicate, of which Jordan and Ferguson and six others, all of the state of New York, were members. Respondents contend that the titles to some of the tracts of land in controversy are shown by the record to have been held by Jordan and Ferguson individually rather than as trustees, but in view of the conclusions we have reached it may be assumed that the beneficial title to all of the tracts was in the syndicate. Ferguson and Jordan, trustees, were authorized by the partnership agreement to take, hold and dispose of all of the property acquired by the syndicate.

By deed dated September 11, 1882, and acknowledged on the same day in New York City and filed for record in Clay County on September 19, 1882, Jordan and Ferguson, as trustees, conveyed to W. B. Worsham of Clay County thirty-eight blocks of the Marion County school land, including the thirty-three blocks involved in this suit, for a cash consideration of $3,010.42. The deed contains the following clause:

"Reserving and excepting, nevertheless, to ourselves, our successors and assigns, all mines, minerals and mineral rights upon or in said lands, together with the right to prospect for and work the same."

On September 18, 1882, F. W. Randall, as attorney in fact for C. N. Jordan and Yates Ferguson, trustees, executed and acknowledged an instrument which makes reference to the deed made by Jordan and Ferguson on September 11, 1882, and the reservation of the minerals contained therein, and releases "all

of said reservation made in said deed." This instrument was filed for record in Clay County on September 20, 1882. The Court of Civil Appeals did not decide whether or not the instrument last referred to was effective to convey to W. B. Worsham the minerals that were reserved in the deed of date September 11, 1882, from Jordan and Ferguson. It held that respondents, who hold under Worsham, have good title to the minerals in virtue of Article 5519, because Worsham took possession of the land under the deed, which conveyed the surface, and under the release, which purported to convey the minerals, and he and his successors in title had thereunder peaceable and adverse possession for more than twenty-five years prior to the filing of the suits. It held further that respondents "should recover under the provisions of Article 5519a."

■ As is pointed out by Chief Justice McDonald in his dissenting opinion, the undisputed evidence shows that no oil, gas or other minerals have been produced from the land in controversy herein and no mining or drilling operations for oil, gas or other minerals have ever been conducted thereon. The reservation in the deed from Jordan and Ferguson was sufficient to sever the minerals from the surface, and if the release executed by Randall did not reunite the surface estate and the mineral estate, the possession of the surface by W. B. Worsham and his successors in title was not possession of the minerals. Elliott v. Nelson, 113 Texas 62, 251 S. W. 501; Rio Bravo Oil Co. v. McEntire, 128 Texas 124, 95 S. W. (2d) 381, 96 S. W. (2d) 1110; Luse v. Parmer, 221 S. W. 1031; Wallace v. Hoyt, 225 S. W. 425; Henderson v. Chesley, 229 S. W. 573. In each of the three cases last cited application for writ of error was refused.

■ One of the requirements of Article 5519 is that possession of the real estate be had under a recorded deed purporting to convey the same. Free v. Owen, 131 Texas 281, 113 S. W. (2d) 1221; Davenport v. Bass, 137 Texas 248, 153 S. W. (2d) 471; Pinchback v. Hockless, 138 Texas 306, 158 S. W. (2d) 997. W. B. Worsham and his successors in title claimed under the release of the mineral reservation executed by Randall, as well as under the deed from Jordan and Ferguson, but they could not avail themselves of the release as a means of acquiring a limitation title under Article 5519 unless they had possession of the real estate that the release purported to convey, that is, the minerals in the land.

Respondents contend, in support of the second ruling made by the Court of Civil Appeals, that even though they may not

have shown possession of the minerals sufficient to meet the requirements of Article 5519, they have proven all of the facts required by the second of the two twenty-five years statutes of limitation, (Article 5519a, Vernon's Annotated Civil Statutes), including the exercising by them of "dominion" over both the minerals and the surface for more than twenty-five years.

We do not express an opinion as to this contention because we have reached the conclusion, after careful examination of the record and the briefs, that the trial court, on another ground, should have instructed a verdict for respondents.

Respondents claim title to the land, including the minerals, under the deed dated September 11, 1882, executed by Jordan and Ferguson and under the release of the mineral reservation executed by F. W. Randall as attorney in fact for Jordan and Ferguson on September 18, 1882. Petitioners take the position that Randall had no authority to execute the release of the mineral reservation and that the beneficial title to the minerals remained in those who composed the partnership, Consolidated Copper Syndicate. They claim title to the minerals in the land in controversy through W. B. Brush, to whom George P. Warner, receiver of the Consolidated Copper Syndicate, on December 14, 1905, with the approval of the district court of Travis County, sold all of the lands of the syndicate then remaining unconveyed, for a consideration of $100.00.

■■ The copy from the records of the release of the mineral reservation, executed September 18, 1882, and recorded two days thereafter in the deed records of Clay County, was admissible in evidence as an ancient instrument without proof of its execution, the record of the instrument properly registered for nearly sixty years possessing at least as high a degree of authenticity as an original deed offered as an ancient document at common law. Emory v. Bailey, 111 Texas 337, 343-345, 234 S. W. 660. The instrument contains the recital that it is executed under power of attorney from C. N. Jordan and Yates Ferguson, trustees. It is signed "C. N. Jordan, Yates Ferguson, by their Att'y. in Fact, F. W. Randall," and the notary's certificate states that Randall acknowledged that he executed the instrument in the capacity therein stated. From the recital in this ancient instrument, the existence of the power under which the grantor assumed to act will be presumed. Watrous v. McGrew, 16 Texas 506, 513-514; Johnson v. Timmons, 50 Texas 521, 534-537; Garner v. Lasker, 71 Texas 431, 435-437, 9 S. W. 33; Harrison v.

McMurray, 71 Texas 122, 129-130, 8 S. W. 612; Stooksbury v. Swan, 85 Texas 563, 574, 22 S. W. 963; Brown v. Orange County, 88 S. W. 247; Huling v. Moore, 194 S. W. 188 (application for writ of error refused) ; Republic Production Co. v. Lee, 95 S. W. (2d) 1053; McCormick & Ray's Texas Law of Evidence, pp. 774-779, Secs. 614-617; Wigmore's Evidence, (3d Ed.) Vol. 7, p. 602, Sec. 2144.

In Garner v. Lasker, above cited, the rule is thus stated:

"The doctrine has been repeatedly recognized, in this and other States, that in most cases where a deed would be evidence as an ancient instrument, without proof of its execution, the power under which it purports to have been executed will be presumed."

■ The recital of the power is not to be regarded as conclusive evidence. The presumption that arises from the recital is a true presumption which places on the party against whom it operates the burden of producing evidence to rebut it. Stooksbury v. Swan, 85 Texas 563, 22 S. W. 963; McCormick & Ray's Texas Law of Evidence, pp. 47-61, Secs. 31-38. This being the nature and meaning of the presumption, we have examined all of the evidence in the statement of facts in order to determine whether or not there is any evidence rebutting the presumption or contradicting the fact presumed from the recital. We have reached the conclusion from that examination that the record contains no evidence to rebut the presumption, that is, no evidence of probative value tending to prove that Randall was not authorized to execute the release of the minerals. In our opinion all of the facts and circumstances in evidence are consistent with the existence of Randall's authority.

W. B. Worsham went into possession of the land and began to use it for ranch purposes very soon after it was conveyed to him in 1882. The testimony as to his possession goes back to the year 1884. He continued to use and possess the lands until he died in 1915, and after his death those who succeeded to his title have continued to use and possess it. There has been no actual possession of the minerals, but W. B. Worsham and his successors in title have consistently made the same claims of title and have exercised the same dominion over the land as those which ordinarily are made and exercised by land owners when there has been no severance of the mineral estate from the surface estate.

C. N. Jordan and Yates Ferguson rendered thirty-eight blocks of the Marion County school land for taxes in 1882, but rendered

none of the land in 1883. It was in that year, 1883, that the land was first rendered for taxes by W. B. Worsham. The deputy tax assessor and collector of Clay County testified that he made an investigation of the tax records for the years 1905 to 1941, inclusive; that the land in controversy was rendered for taxes by W. B. Worsham each year until 1915, and thereafter by Worsham's estate, Carl M. Worsham, K. N. and Leola P. Hapgood, Earl Spring and Bryant Edwards; that, save for one year when Carl Worsham permitted his taxes to become delinquent for a short time, all of the taxes were paid before they became delinquent by those who had rendered them; and that during all that time (except for renditions and payments of taxes on mineral leases for one or more years by lessees under the Worsham title) no other person rendered the property for taxes or paid taxes on it. W. B. Worsham and the persons holding under him did not limit their renditions to the surface interest or estate but, as the witness expressed it, "just rendered the land, just the fee."

The various instruments introduced in evidence affecting the land in controversy, executed by W. B. Worsham, his heirs and assigns, are conveyances of the land and not merely of the surface and they contain no exception of the minerals and no reference to an exception or reservation of them. This is true of three deeds of trust executed by W. B. Worsham in 1884 and 1888, of partition deeds between Carl M. Worsham and Leola P. Hapgood executed in 1923, of deeds made by Carl Worsham in 1933 to a committee of his creditors, of the committee's deed to Earl Spring in 1935, and of Spring's deed to Bryant Edwards in 1936. The record contains a number of mineral deeds and oil and gas leases affecting certain of the blocks of the Marion County School land involved in this suit, executed by respondents in 1923, 1937, 1938 and 1940, and many assignments of these oil and gas leases.

Petitioners pleaded their title specially, alleging that they acquired it as devisees and heirs of Mrs. Sallie Grant Brush, who became the owner of the minerals in the land as the surviving wife of W. B. Brush, to whom George P. Warner, receiver of the partnership Consolidated Copper Syndicate, on December 14, 1905, sold all the lands and interests in lands in Texas belonging to the said syndicate and remaining unconveyed.

The record fails to show the assertion, during the period of nearly sixty years from the execution of the deed by Jordan and Ferguson, trustees, to W. B. Worsham on September 11,

584

1882, to the filing of these suits on May 13, 1941, of any claim to the land in controversy or the minerals in it by Jordan and Ferguson, trustees, or by the Consolidated Copper Syndicate, or by any member of that partnership, or its receivers, or by W. B. Brush or his surviving wife, or by any of petitioners. On the contrary, there is undisputed evidence in the statement of facts that no claims were asserted adverse to those of full and exclusive right of possession and ownership made by W. B. Worsham and those holding under him.

Oil was first discovered in Clay County at Petrolia, about fifteen or sixteen miles from the land involved in this suit, in the year 1901, and thereafter for about seven years many producing oil wells were drilled in that field. Later, at intervals of about five or six years, interest arose in Clay County lands and oil and gas leases were executed with payments of bonus for them. A well was drilled for oil near this land in 1919 and completed as a dry hole. In 1923 the first well was drilled on the Marion County school land. It was not a producer. Another dry hole was drilled on the Marion County school land in 1938, but in 1940, and thereafter several producing wells were completed on that land and in that vicinity. As far as this record discloses petitioners and those through whom they claim title have executed no mineral leases and no mineral deeds affecting any of the lands in controversy.

On May 2, 1887, in a suit filed in the Supreme Court of Kings County, New York, George C. Brainerd was appointed receiver of the Consolidated Copper Syndicate and also trustee in place of Yates Ferguson, who had died, and of Conrad N. Jordan, who had resigned. He filed two elaborate and duly verified reports or accounts, one covering the period from his appointment to April 15, 1891, and the other the period from April 15, 1891, to August 1, 1893. A schedule annexed to the first report contains a statement of Texas lands sold by him, showing sales of various tracts for considerations amounting in all to $43,-306.00. None of the land in controversy appears on this schedule. Another schedule contains a list of "all lands in the State of Texas remaining unsold." About seventy tracts of land in nine counties are here listed. Only three of the tracts, aggregating about eleven hundred acres, are in Clay County. None of the land in controversy herein is on the list. The second report of the receiver shows that he has sold no other Texas lands and its schedule of all lands in Texas remaining unsold is substantially the same as the schedule attached to the first report, showing for Clay County only the same three tracts of land that appear on the schedule of the first report.

A referee appointed by the New York court filed on February 1, 1894, a report approved by the court containing, among other findings, a summary and approval of the accounts of the receiver. The referee's report recites that property and assets of the syndicate remaining undisposed of and uncollected consists of two claims, one for $1,977.22 and another, probably no value, for $50,000, and "40,222 acres of land in isolated sections or parts of sections" in the counties of Archer, Clay, Wichita and five other counties in Texas.

Thereafter, on August 12, 1895, in a suit brought in the district court of Travis County, Texas, for the use and benefit of all the owners of interests in the Consolidated Copper Syndicate, George P. Warner was appointed receiver. Annexed to two petitions filed in that suit were lists of lands "still owned by the partnership." On the two lists are four tracts of land in Clay County, but the lands in controversy herein do not appear thereon.

On December 14, 1905, Warner, receiver, made application to the district court of Travis County for authority to sell to W. B. Brush for $100.00 in cash all lands and interests in lands in the State of Texas owned by the Consolidated Copper Syndicate and remaining undisputed of or unsold, including several tracts described in the application as being the remaining lands known or believed by him to belong to the syndicate. The application here describes, or undertakes to describe, four tracts in Clay County, one of them thus: "Abstract No. 308, Patent No. 586, Vol. 16, being part of the Marion County School Lands." The court on the same day, December 14, 1905, authorized the sale to be made, and on the same day approved and confirmed the sale, as reported by the receiver, to W. B. Brush for $100.00. The order authorizing the sale gives the same description of the land as that contained in the application and the receiver's report of sale and the order of confirmation refer to the first order for description. On the same day, December 14, 1905, the district court of Travis County entered its final decree terminating the receivership, reciting that the partnership was wholly insolvent and directing the receiver to apply the balance of the funds remaining in his hands to the payment, pro tanto, of his own compensation.

Thus it is shown by the record that neither the receiver of the properties of the syndicate appointed by the New York court nor the receiver appointed by the district court of Travis County asserted claim to any of the land in controversy herein or listed

it as property of the syndicate. The description "Abstract No. 308, Patent No. 586, Vol. 16, being part of the Marion County School Lands" appearing in Warner's application to sell all lands of the syndicate remaining unsold is not a description of any of the land involved in this suit. The Marion County school land was surveyed and patented as one tract containing 17,-416.06 acres. The lands in controversy herein are thirty-three of the many blocks of one hundred sixty acres each into which the Marion County school land was surveyed after it was patented. The application is not for authority to sell all of the Marion County school land but merely a part of it, with nothing to define or designate what part. This description is too indefinite to be considered the assertion of ownership of the minerals in the blocks of the Marion County school land that were conveyed to W. B. Worsham.

Other significant facts in evidence, most of which are disclosed by the petitions, reports and orders in the two receivership proceedings, will be mentioned briefly.

In the will of Sallie Grant Brush, through whom petitioners claim by devise or descent, no reference is made to any land or interest in land in Clay County. The inventory of her estate lists real estate in Travis County but none in Clay County.

Conrad Jordan and Yates Ferguson, who made the deed to W. B. Worsham, were not merely the holders of the legal title; they were owners of a great part of the beneficial interest. When the partnership, Consolidated Copper Syndicate, was formed in 1881, Jordan became the owner of an 8/48th interest and Ferguson of a 2/48th interest. Both advanced substantial amounts to be used in the purchase of lands for the partnership and agreed to make additional advancements. The referee's report in the New York receivership suit in 1894 shows that the partnership was indebted in the sum of about $76,000.00 on account of loans that had been made to it by Yates Ferguson and in the total amount of about $64,000.00 on account of loans made to it by Conrad Jordan. These loans were secured by a first lien on all the property of the syndicate.

F. W. Randall, who released the minerals in the land to W. B. Worsham, is shown by the referee's report made to the New York court to have become the owner of a non-voting interest in the partnership. Randall was made a party in the suit filed in the district court of Travis County and he was in that case adjudged to be the owner of an interest in the property of the syndicate.

The acknowledgement to Randall's release of the minerals was taken by G. P. Mead as notary public of Clay County. Mead, who was a reputable and honorable lawyer, practiced law and acted as land agent in Clay County, moving to Fort Worth in about 1888. The reports of Brainerd, the receiver appointed by the New York court, show that under his direction agents were employed in Texas to make investigations as to Texas lands of the syndicate, to cause surveys to be made and to pay taxes and interest on the lands, and that fees were paid to lawyers and litigation conducted in Texas over the titles to Texas land. The reports show that many of these payments for surveying, taxes and interest were made by G. P. Mead as agent. The receiver's accounts contain charges for commissions paid to Mead for sales of Texas land, for his expenses on account of trips to Dallas, Austin, Vernon, Henrietta and Wichita Falls, for recording fees and for plats and patents procured by him from the General Land Office.

David Wallace, of New York, was one of the original members of the partnership, Consolidated Copper Syndicate, and in the judgment rendered by the district court of Travis County on December 14, 1905, his widow was adjudged to be the owner of an interest in the partnership property. By an order entered in the Supreme Court of Kings County, New York, on February 28, 1894, the receiver was directed to pay to David Wallace $1,500.00 "for costs and expenses incurred by him in reference to the real property in Texas forming the subject matter of this action." Another of the original partners, John P. Adams, of New Work, was attorney for the plaintiffs and for the receiver Brainerd in the New York suit.

A report of the receiver Warner filed in the district court of Travis County on July 1, 1896, contains the statement that "since his qualification as such receiver he has made diligent inquiry to learn what property said Consolidated Copper Syndicate owned in the State of Texas." Warner must have found the recorded deed from Jordan and Ferguson, trustees, to W. B. Worsham, with the reservation of the minerals and the recorded release of the minerals by Randall if he made or caused to be made even a casual examination of the deed records of Clay County, and he must have learned the truth about Randall's authority to execute the release if he made inquiry of the persons intersted or of the persons who knew the facts. Some of those persons, doubtless most of them, were living in 1896.

The facts which have been detailed showing the diligence of the receiver Brainerd with respect to the Texas lands owned

by the syndicate, his employment of agents and attorneys, his expenditure of large sums to investigate and to protect the syndicate's titles, his failure to assert claim to the minerals in the land involved in this suit and his close relations with G. P. Mead, David Wallace and John P. Adams, who must have known the facts about the syndicate's ownership and disposition of the minerals in more than five thousand acres of land, the subject matter of this litigation,—all lead in our opinion to no other reasonable inference or conclusion than that the syndicate had divested itself of title to the minerals in this land.

Petitioners contend that a power of attorney which they offered in evidence from Conrad N. Jordan and Yates Ferguson, trustees, to Frank W. Randall, dated June 3, 1882, proves or tends to prove that Randall was without authority to execute the release of the minerals to Worsham. The power of attorney appoints Randall the attorney of Jordan and Ferguson "to contract for the sale and conveyance, subject to telegraphic approval by us, the said trustees, of the purchase price thereof, of certain tracts or parcels of land in the State of Texas heretofore conveyed to the said trustees as follows." Then follows a list of fifteen deeds described by grantor, date and the number of acres conveyed. Two of the deeds thus described in the power of attorney are deeds that conveyed to Ferguson and Jordan nineteen of the thirty-eight blocks of the Marion County school land that were included in Jordan and Ferguson's deed of September 11, 1881, and Randall's release of the minerals dated September 18, 1882, to W. B. Worsham. As to the other nineteen benefits, the power of attorney in evidence confers no authority whatever upon Randall.

■■ The power or authority that is presumed from the bare recital thereof in an ancient deed is a lawful or sufficient power of authority. Smith v. Swan, 22 S. W. 247, (application for writ of error refused) ; Huling v. Moore, 194 S. W. 188, 191 (application for writ of error refused). If that were not true the presumption would be without meaning and of no value. The power of attorney executed June 3, 1881, did not authorize Randall to convey land; it gave him only authority to contract for the sale of certain land subject to telegraphic approval of the price. It is not to be assumed that Randall, in executing the release of the minerals, acted under a power of attorney that did not authorize him to execute it and that had no reference whatever to one-half of the land that he conveyed. Evidence of the existence of that power of attorney does not tend to prove that Randall acted under it in executing the release of the minerals, nor is it evidence tending to prove that he acted without

authority. Brown v. Orange County, 88 S. W. 247; Bean v. Bennett, 80 S. W. 662. It is our opinion further that the mere fact that the power of attorney was filed for record the day before the release of the minerals was filed for record cannot be considered evidence that the parties to the release looked to that power of attorney for an authority that the instrument clearly did not undertake to confer.

■ Invoking the general rule that a trustee cannot delegate the authority that has been conferred upon him, petitioners make the contention that, because Jordan and Ferguson were truseees with authority to take and dispose of the property owned by the syndicate, there can be no presumption that they authorized Randall to release the minerals. The rule is subject to the qualification that although a trust is not permitted to delegate a discretionary power, he may, after determining how to exercise the discretion, commit to another acts which are merely mechanical or ministerial; and it has been held that the mere execution and delivery of a deed is a mechanical or ministerial act that may be performed by an attorney or agent when the trustee has decided whether to sell or not and on what terms. Smith v. Swan, 22 S. W. 247 (application for writ of error refused); Empire Gas & Fuel Co. v. Allen, (U. S. C. A.) 294 Fed. 617; Jesseph v. Carroll, 126 Wash. 661, 219 Pac. 429; Keim v. Lindley, 54 N. J. Eq. 418, 30 Atl. 1063; Ball v. Consolidated Realty Co., 246 Ky. 458, 55 S. W. (2d) 60; Restatement of the Law of Trusts, Vol. 1, p. 444, Sec. 171; Scott's, the Law of Trusts, Vol. 2, pp. 916-917, Sec. 171.02; Perry on Trusts and Trustees, (6th Ed.) Vol. 1, p. 660, Sec. 509; Bogert's text contains the statemant that it may be possible to hold that the mere writing out and signing of the paper is a ministerial act and capable of delegation to an agent, citing Jesseph v. Carroll, 126 Wash. 661, 219 Pac. 429, but he expresses the opinion that "this seems a dubious holding." Bogert's, the Law of Trusts and Trustees, Vol. 3, p. 1773, Sec. 556.

Smith v. Swan, 22 S. W. 247, the opinion in which was written by Judge F. A. Williams, one of Texas' greatest judges, when he was Associate Justice of one of the courts of civil appeals, is very closely in point, and we adopt the decision made in that case as controlling in this case. In that case Hiram G. Runnels was made executor by a will which expressly conferred upon him power to sell and convey land of the estate without the sanction of the court. B. F. Tankersley, by deed reciting that he acted as agent and attorney in fact for Hiram G. Runnels, conveyed to A. N. Smith land belonging to the estate. No power of attorney appeared of record and none was discovered after

search. There was possession, under Tankersley's deed, of the lot in controversy in the case, but not of sufficient duration to ripen into title. Ownership was claimed and exercised under the deed for more than thirty years and the circumstances were such as to admit of no other inference but that the adverse parties acquiesced in the claim under the deed. It was held that under these circumstances the court would presume the existence of a legal and adequate power in Tankersley to execute the deed. The court in so holding said:

"It is undoubtedly true that a discretionary power of sale, such as that given to Runnells by this will, cannot be delegated by the donee or trustee to another. The negotiation of such a sale, and the arrangement of an agreement to all its details, must be done by the trustee himself. Acts which are merely mechanical or ministerial may be committed by the trustee to another; and this includes the mere act of executing and delivering the deed of conveyance where everything else is done by the trustee."

The presumption indulged is, in our opinion, one presumption and is not the building of one presumption upon a fact presumed. It is that Jordan and Ferguson, after determining, in the exercise of their discretionary power, that Worsham should be invested with the entire estate or interest in the land, the minerals as well as the surface, authorized Randall to carry out their determination by executing and delivering the release of the minerals. This we believe is to presume, as was done in Smith v. Swan above discussed, the existence of an adequate legal power. But if it can be correctly said that the conclusion expressed involves the drawing of two presumptions from the recital of authority in the release of the minerals, we believe that is justified by the very long period of time and the other facts and circumstances of this case which have been discussed. State of Texas v. Gallardo, 106 Texas 274, 286, 166 S. W. 369.

The presumption of lawful and sufficient authority for the execution of the release of the minerals is further supported by the fact that Jordan and Ferguson were not merely holders of the legal title but were members of the partnership and the owners of very substantial interests in the beneficial title.

The judgments of the district court and the Court of Civil Appeals in both cases are affirmed.

Opinion adopted by the Supreme Court, October 27, 1943.

Rehearing overruled November 24, 1943.