**PETERSON et al. v. HOLLAND et al.**

No. 6154.

Court of Civil Appeals of Texas. Texarkana.
May 10, 1945.

Rehearing Denied May 24, 1945.

Foster T. Bean, of Kilgore, Reagan Huffman, of Marshall, Blalock, Blalock, Lohman & Blalock, of Houston, Brachfield & Wolfe, of Henderson, and Baker, Botts, Andrews & Wharton, Norman M. West, Walter C. Clemons, and John E. Green, Jr., all of Houston, for appellants.

V. W. McDavid, of Henderson, and Chester M. Fulton, Chas. W. Bell, Andrews, Kelley, Kurth & Campbell, and Fulbright, Crooker, Freeman & Bates, all of Houston, for appellees.

· HALL, Chief Justice.

This is a trespass to try title action instituted by appellants J. N. Peterson, Ben B. Peterson, and Mrs. Rosa Mae Griffin, brothers and sister, heirs of D. J. Peterson and wife, both deceased, against appellee W. H. Holland, lessee of the International-Great Northern Railroad Company, and concerns the title to 14.6 acres of land, a part of the Ruddle Survey comprising a segment of the right of way of said Railroad. Other parties to this appeal either intervened or were made parties by the original parties. Appellees are International-Great Northern Railroad Company, successor to the International-Great Northern Railway Company and the International Railroad Company and its lessee, W. H. Holland. Appellants are Ben Peterson, Mrs. Rosa Mae Griffin, representatives of J. N. Peterson (who died during pendency of this suit), Alice Peterson, his wife, and Frank A. Brown, administrator, and their lessees, Gulf Oil Corporation, Margay Oil Company, Atlantic Refining Company, and Edwin M. Jones. At the conclusion of the evidence both parties made motion for an instructed verdict, that of appellees was granted, and judgment was entered for them. The evidence is without dispute.

Appellants by their first six points assert that a verdict should have been directed for them for the reason that the record title was in Martha Houston Thompson, their predecessor in title, and appellees failed to establish title to the fee in said land under either the ten or the twenty-five year statutes of limitation.

As said before, the land in controversy constitutes a portion of the right of way of the International-Great Northern Railroad in Rusk County and unless appellees have established their title by either the ten or the twenty-five year statutes of limitation to the fee, then the fee by virtue of appellants' record title thereto rests with them. The instrument under which the International Railroad Company entered upon the land in controversy is:

"The State of Texas,

"Know All Men By These Presents,

"That for and in consideration of the enhanced value to be given, and is contemplated to arise to my Lands and other property by the location and construction of the International Railroad, and for the further consideration of One Dollar, to me in hand paid, the receipt whereof is hereby acknowledged, J. M. Thompson, Guardian of Martha H. Thompson, of the County of Rusk, and State of Texas, have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release to the International Railroad Company, a strip of (200') Two Hundred feet in width of land over the tracts of land particularly described as follows, viz: a tract in Rusk County known as Four Hundred acres of the Isaac Ruddle Survey and One Hundred and twenty acres of the John S. Corothers Survey over and upon which the said Company has built or may hereafter build its Railroad; and also the right to have the same strip of land in width, over and upon any other lands now owned or which may be hereafter owned by me or her in this State, through which said Railroad has been or may be hereafter built; together with all and singular the rights, members, hereditaments and appurtenances to the same belonging or in anywise incident or appertaining; To have and to hold, all and singular, the said premises unto the said International Railroad Company, or its assigns, forever.

"And for the considerations aforesaid, as herein set forth I do further grant to said Company such earth, material, timber and rock as may be found on the lands herein mentioned, and granted herein as right of way, which may be required for the construction of said Railroad; and I do hereby grant to said Company a full release from all claims against said Company for damages that may be sustained by their work in the construction and for the right of way of said Railroad over any of the said lands. *It being understood that by the above conveyance I mean only to give my individual consent to said Company to build its Railroad on the before described land I not being empowered to give any such right as would bind the minors or their estate.*

"Witness my hand this Oct. 28/61.

"/s/ J. M. Thompson."

The italicized portion of the above instrument is handwritten. On the date of its execution Martha H. Thompson was a minor without a guardian of her estate and J. M. Thompson who executed said instrument was her half-brother. Many rules for the construction of the above instrument are advanced by both parties, but as said by our Supreme Court in the recent case of Dallas Joint Stock Land Bank of Dallas v. Harrison et al., 138 Tex. 84, 156 S.W.2d 963, 967:

"The trend of modern decisions is to relax the strictness of the old rule as to repugnancy in deeds, and the sounder method of construction is used which permits the consideration of all parts of an instrument. In order to arrive at the intention of the parties interested, a construction is preferred which harmonizes apparently conflicting clauses. 14 Tex.Jur. p. 920, § 141, and cases cited. This court has repeatedly held that the dominant purpose in construing a deed is to ascertain the intention of the parties as expressed in the deed itself, and such intention expressed therein is a controlling factor. It is a rule that the intention of the parties must be gathered from the entire instrument, and not from some isolated clause or paragraph. Bumpass v. Bond, 131 Tex. 266, 114 S.W.2d 1172; Totton v. Smith, 131 Tex. 219, 113 S.W.2d 517; [Tipps v. Bodine, Tex.Civ.App., 101 S.W.2d 1076, writ refused]; 14 Tex.Jur. p. 919 et seq., § 140 et seq."

From the above holding it is clear that in construing instruments of conveyance the first and paramount fact to be determined is the intention of the grantor gathered from the instrument as a whole. And this rule must fail of its purpose be-

fore technical rules of construction can be applied. Gladys City Oil, Gas & Mfg. Co. v. Right of Way Oil Co., Tex.Civ.App., 137 S.W. 171, affirmed by Supreme Court, 106 Tex. 94, 157 S.W. 737, 51 L.R.A.,N.S., 268; Tipps v. Bodine, supra. To arrive at the grantor's intention in executing the above instrument we must examine the instrument in its entirety. When this is done, we find: (1) That Thompson, the grantor, did not own the land described therein; (2) he is referred to in the body of said instrument as guardian of Martha H. Thompson though in fact he was not her guardian; and (3) the concluding hand-written paragraph: " * * * It being understood that by the above conveyance I mean only to give my individual consent to said Company to build its Railroad on the before described land I not being empowered to give any such right as would bind the minors or their estate." These facts point unerringly to the grantor's intention to give only his consent for the grantee to build its railroad over and across his minor sister's land. That is what he said in plain words in the instrument itself. Such declared intention, then, must control our construction of the instrument. In our opinion, any other construction would do violence to the plain language of the instrument. Moreover, appellees in their brief admit that the conveyance does not pass the fee title to the Railroad for the reason that Thompson was not the owner of the land nor guardian of the minor's estate. It is our conclusion, then, that the Railroad having entered under the instrument above set out, and used the property for over seventy years for railroad purposes, has matured an easement to the right of way. This right and this right only, it now holds, unless it has under the ten and twenty-five year statutes of limitation matured title to the fee. In reaching this conclusion we are not unmindful of the holding of the Supreme Court in the case of Brightwell v. International-Great Northern R. Co., 121 Tex. 338, 49 S.W.2d 437, 84 A.L.R. 265; and the Waco Court of Civil Appeals in Friedman Oil Corp. v. Southern Oil Refining Co., 73 S.W. 2d 137, 139. In the Brightwell case, supra, the printed portion of the deed under consideration was identical with the printed part of the instrument here inolved and was from J. M. Thompson the owner of the right of way conveyed, but it did not contain the hand-written italicized paragraph appearing in the instrument here involved. The deed in that case was held, and

very properly so, to convey the fee. In the Friedman case, supra, the deed to the Railroad under consideration from one Harrington purported to convey the fee simple title to the right of way and not a mere easement or permissive use, and the trial court found that appellants, plaintiff and intervenors below, failed to show title to themselves. In that case it is said:

"Said Harrington deed therefore purported to convey the fee-simple title to the land described therein. Said deed was promptly recorded. It, together with the possession held thereunder, was notice to all claiming in opposition thereto of the extent and character of the railroad's claim. Holland v. Nance, 102 Tex. 177, 183, 114 S. W. 346. *When a railroad purchases the land, as distinguished from a mere right of user or easement,* and in doing so acquires by its deed an imperfect title, it stands in the same situation as other persons with reference to the statutes of limitation." (Italics ours)

Both cases cited last above follow the rule laid down by Chief Justice Stayton in the case of Calcasieu Lbr. Co. v. Harris, 77 Tex. 18, 13 S.W. 453. Neither of those cases, in our opinion, are controlling in the interpretation of the instrument here under discussion because of the difference of the verbiage employed in the several instruments involved.

■ We shall discuss next the applicability of the twenty-five year statute of limitation upon appellees' title as presented in the record. Since the instrument in writing executed by "Thompson, Guardian," in favor of the International Railroad *does not purport to convey the right of way,* we have reached the conclusion that the twenty-five year statute of limitation (R.C.S. Article 5519, Vernon's Ann.Civ.St. art. 5519) does not apply. West v. Hapgood, 141 Tex. 576, 174 S.W.2d 963 and cases there cited; Unsell v. Federal Land Bank, Tex.Civ.App., 138 S.W.2d 305. One of the prerequisites of maturing title under the twenty-five year statute of limitation is that the holding must be under an instrument in writing purporting to convey the title.

The undisputed facts with respect to the appellees' claim under the ten years statute, Vernon's Ann.Civ.St. art. 5510, are: The present Railroad and its predecessors have been in possession of the segment of right of way here involved under the instrument copied above, running trains

daily for more than seventy years, it has paid taxes assessed against said right of way before delinquency since 1900 (the taxes prior to 1900 were remitted by the Legislature). Many years ago the Railroad fenced this right of way to a width of 200 feet. On April 9, 1917, the Railroad leased a portion of the right of way here involved to Ben Peterson, an appellant here, for agricultural purposes for a term of five years, the consideration being $1.00 per year, and the agreement of Peterson to keep the gates closed and fences repaired and "not to allow Johnson grass to grow or go to seed on said land, and not to allow any kind of inflammable matter to accumulate on said land * * *." On April 9, 1922, another five-year lease was entered into by and between the same parties with a similar consideration. On April 9, 1927, the third lease was entered into by the same parties with practically the same consideration, except that the cash consideration was increased to $2 per year and the requirement added that Ben Peterson not allow Russian thistle to grow and go to seed thereon. The 1927 lease contained the following clause:

"Lessor reserves the oil and mineral rights in the premises and the right to terminate ipso facto this lease for the purpose of entering thereon to prospect for, produce, conserve and dispose of any and all oil and minerals on the said premises. Provided, however, in the event of such termination Lessor will pay Lessee the reasonable value of any crops then growing thereon."

These leases were not filed for record and there is no evidence that any of the appellants other than Ben Peterson had knowledge of their contents. On January 30, 1931, the Railroad leased a part of the premises here involved to Houston Oil Company for the erection of a loading rack, and shortly thereafter the loading rack was erected by the Oil Company on a portion of the right of way, to which the Railroad constructed a side track. This lease was not recorded. On March 3, 1931, the Railroad executed and delivered to the Texas Unity Oil Company an oil, gas and mineral lease covering the property involved herein. This lease was not recorded, but on the same date the lessee therein assigned and transferred certain interests thereunder to one J. E. Copeland which made specific reference to above unrecorded lease and which was recorded in the Deed Records of Rusk County, Texas, March 5, 1931, more than ten years and eight months before the filing of this suit. No operation was had under the Texas Unity lease and it was at a later date cancelled. On September 12, 1934, the Railroad executed and delivered to Tolbert & Riley an easement for a pipe line across a portion of the right of way here involved, and on March 22, 1941, the Railroad executed and delivered an oil, gas and mineral lease to appellee Holland which provoked this lawsuit.

■ As previously stated, the entry of the Railroad under the written instrument from "Thompson, Guardian" to it, and its long-continued use of the right of way for railroad purposes has ripened in the Railroad an easement to the portion of right of way here in controversy. The appellants admit as much. We have also reached the conclusion that as early as 1927 (the date of the last agricultural lease between the Railroad and Ben Peterson) at least the Railroad was making claim to the oil, gas and minerals in and under said land. And that as early as March 5, 1931, the date of the recordation of the royalty assignment from the Texas Unity Oil Company to Copeland, constructive notice of the Railroad's claim to the minerals in and under said right of way was visited upon Ben and J. M. Peterson and Mrs. Griffin, appellants.

■ Are the claims to this property, together with the uses and control over it exercised by the Railroad in addition to the continual running of trains, as shown by the undisputed evidence, sufficient to support the judgment of the trial court under the ten year statute of limitation (Art. 5510, R.C.S.)? Under its long use the Railroad had exclusive control of the surface of the 200-foot strip of land for railroad purposes lying between its fences, and its possession for such purposes could not be disturbed even by the owner of the fee. Olive v. Sabine & E. T. R. Co., 11 Tex.Civ.App. 208, 33 S.W. 139. But having entered into possession of the right of way under the instrument, heretofore set out in full, executed by J. M. Thompson, and in recognition of the true title of the minor, Martha H. Thompson, the Railroad's possession and occupancy is in subjection to the recognized title. And as said in Thompson v. Richardson, Tex.Com.App., 221 S.W. 952, 953:

"He cannot perfect a claim of title or defense under the statute (Article 5510) as against the true owner, without bringing to

his notice a repudiation of the recognition, and of the assertion of an adverse claim. The right to shield his possession under the statute, or to carve an estate, dates only from his repudiation. Houston Oil Co. v. Jones [109 Tex. 89], 198 S.W. 290; Roseborough v. Cook, 108 Tex. 364, 194 S.W. 131; Davis v. Howe [Tex.Com.App.], 213 S.W. 609."

■ So in order for the Railroad to prevail under the ten year statute of limitation with respect to the fee, three things must concur, viz., occupancy, adverse claim, and possession. This question is ably discussed by Justice Harvey of this Court in the case of Monroe v. Lyons, 189 S.W.2d 90. Undoubtedly the Railroad had the exclusive possession of the right of way under its easement. It also, as early as April 9, 1927, gave notice to Ben Peterson of its claim to the minerals in and under this land. But on that date Ben Peterson did not own the land. The record title was in his parents who were still living and there is no evidence in the record that they had notice of any claim by the Railroad to the minerals. It is contended by appellees that during the time Ben Peterson was farming the right of way he was the agent of the Peterson family, managing their farming interests, and on that account notice to him as their agent would be notice to them of the Railroad's claim to the minerals. Granting that Ben Peterson was the agent of the Peterson family, with respect to their farming interests, there is no evidence in this record that he was acting for them in taking the agricultural lease from the Railroad and in cultivating a part of its right of way. The leases to the right of way were to Ben Peterson only, and not to the Peterson family. Ben Peterson paid the consideration and he alone cultivated the right of way. In our opinion, any notice he received through this private venture of his own would not be binding upon his principals whose estate he was managing. In other words, the notice he received of the Railroad's claim to the minerals came through a private enterprise of his own and is not connected in any respect with the management of his father's farming interests so far as this record reflects. The notice that was imparted to him by virtue of this private enterprise would not be visited upon the other members of the Peterson family. Chicago, R. I. & G. R. Co. v. Sears, Tex.Com.App., 210 S.W. 684; Sessums v. Citizens' National Bank, Tex.Civ.

App., 72 S.W.2d 403, and cases there cited; 3 C.J.S., Agency § 264, p. 197. Then so far as the other members of the Peterson family and their lessees, appellants here are concerned, no notice was visited upon them of any claim by the Railroad to the minerals under its right of way until the recordation of the assignment from the Texas Unity Oil Company to Copeland, March 5, 1931, unless the acts of the Railroad heretofore referred to and hereafter discussed were sufficient to put them upon notice. The fencing of the right of way by the Railroad was not an act disconnected from the use of the property for railroad purposes. It had a right to fence the right of way under the terms of R.C.S. Article 6402 to lessen its liability for killing or injuring live stock. See Galveston, H. & S. A. R. Co. v. McIver, Tex.Civ.App., 245 S.W. 463. We have reached the conclusion that the cultivation of the right of way by Ben Peterson under the agricultural leases was not sufficient to give notice of an adverse claim by the Railroad to the minerals under the right of way. It will be noted that the money consideration for the agricultural leases was a mere pittance, $1 per annum for the first two, and $2 per annum for the third. It is at once apparent that the main and controlling consideration passing from Peterson to the Railroad was the keeping the right of way clean of rubbish, preventing the growing and seeding of Johnson grass and Russian thistle, and keeping the right of way fence intact during the term of said leases. These obligations devolved upon the Railroad as the owner of the easement over the right of way, part of which were made so by statute, Article 6401, R.C.S. As heretofore stated, even the owner had no right to enter upon the premises of the enclosed right of way and make use of the surface except with the consent of the Railroad, the admitted owner of the easement. Olive v. Sabine & E. T. R. Co., supra.

■ It is contended also that the payment of taxes by the Railroad on the right of way was sufficient to give notice to appellants of its adverse claim to the fee. There is nothing in this record to show that the Railroad was paying on any interest in the right of way other than an easement.

■ Neither do we think the letting by the Railroad of a portion of the right of way to the Houston Oil Company upon which to build a loading rack and the construction of such loading rack by the Oil Company was sufficient to give notice to

appellants of an adverse claim by the Railroad to the fee. As we view it, this act was in furtherance of the business of the Railroad—transportation of freight. The record reveals that the Railroad built a side track to this loading rack where it could spot cars to be loaded with oil from the loading rack. We can think of no more convenient or efficient method of securing freight for transportation.

 This brings us, then, to the constructive notice visited upon appellants by the recordation of the assignment from Texas Unity Oil Company to Copeland, making reference to lease of the right of way by the Railroad to Texas Unity Oil Company. In January and February 1931, some thirty to sixty days before the recordation of the assignment from Texas Unity to Copeland, the Peterson family executed and delivered oil and gas leases to the appellant oil companies herein to the lands on both sides of the right of way here in controversy, thus severing the mineral estate from the surface estate of said land before any act or acts of the Railroad showing an adverse claim to the minerals other than the actual notice given to Ben Peterson, at a time when he owned no interest in the land, of its claim to the minerals set out in the 1927 lease to him. The occupancy of the surface begun by the Railroad after that time adverse to the Petersons' mineral estate could not affect their lessees, Oil Company appellants herein, the holders of the mineral leases to this land. West v. Hapgood, supra; Wallace v. Hoyt, Tex. Civ.App., 225 S.W. 425, writ refused; Henderson v. Chesley, Tex.Civ.App., 229 S.W. 573, 574, writ refused. This for the reason that the lessee appellants, operating oil companies, were not shown to have had either actual or constructive notice of the Railroad's claim to the mineral estate in the right of way.

 Furthermore, this record is devoid of evidence of any effort by the Railroad to take possession of the minerals in and under the right of way other than the giving to the Texas Unity Oil Company the unrecorded mineral lease of March 3, 1931, until it leased the premises to appellee Holland in 1941. Over ten years elapsed between the two leases, during all of which time this land was proven oil land with producing oil wells on both sides and in plain view of the right of way. It is held in Henderson v. Chesley, supra, that "In the absence of some attempt by the occupant of the surface to reduce the minerals to possession, a mere assertion of hostile claim to the latter is not aided by possession of the surface."

It is our opinion that the acts listed above neither singly nor collectively are sufficient as a matter of law to visit notice upon the appellants of an adverse claim by the Railroad to the fee title in the right of way.

 The contention is made by appellees that the leases held by the oil company did not include the right of way, but, by specific reference, excluded it. It is true that the mineral leases called for the outer lines of the right of way, but under the holding of Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391, and Cox v. Campbell, 135 Tex. 428, 143 S.W.2d.361, such calls would extend to the center of the right of way and include the land here in controversy.

For the reasons above stated, we have concluded that appellees cannot recover under the ten year statute of limitation. Therefore, the judgment of the trial court is reversed and the judgment is here rendered for appellants.