

# The Attorney General of Texas

September 25, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Charles F. Aycock
Parmer County Attorney
P. O. Box 286
Farwell, Texas    79325

Opinion No. JM-355

Re:    Distribution of proceeds
from the permanent school fund
in Parmer County

Dear Mr. Aycock:

You ask us several questions relating to the distribution of county permanent school funds pursuant to article VII, section 6b of the Texas Constitution. That constitutional provision provides:

> Sec. 6b. Notwithstanding the provisions of Section 6, Article VII, Constitution of the State of Texas, any county, acting through the commissioners court, may reduce the county permanent school fund of that county and may distribute the amount of the reduction to the independent and common school districts of the county on a per scholastic basis to be used solely for the purposes of reducing bonded indebtedness of those districts or for making permanent improvements. The commissioners court shall, however, retain a sufficient amount of the corpus of the county permanent school fund to pay ad valorem taxes on school lands or royalty interests owned at the time of the distribution. Nothing in this Section affects financial aid to any school district by the state.
> Adopted Nov. 7, 1972. (Emphasis added).

Article VII, section 6 states that the county permanent school lands and the proceeds from their sale "shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested . . . and the counties shall be responsible for all investments. . . ." Tex. Const. art. VII, §6 (emphasis added).

You inform us that the Parmer County Commissioners Court met with the superintendents of each of the school districts located in Parmer County together with numerous board members representing each of the districts. The representatives of the various school districts were

instructed as to the requirements of article VII, section 6b of the Texas Constitution. You also inform us that none of the school districts indicated to the commissioners court that the funds would be used for reducing bonded indebtedness, and all but one of the school districts indicated that it did not intend to use the money for permanent improvements. That one school district (Friona Independent School District), through its representatives, indicated to the commissioners court that in order to comply with the Education Code, it would at some point in time make permanent improvements. The school district did not submit any plans to the court nor was any indication given to the court as to when the improvements might be made or the specific nature of the improvements.

You inform us that the county has invested the school fund in certificates of deposit which matured in March 1985. In that regard, the Friona Independent School District has requested its portion of the fund and has indicated that it would create a sinking fund in which its share of the permanent school funds would be placed until it proceeds with its future plans for permanent improvements.

You first ask:

> May the commissioners court distribute the principal and interest after retaining a sufficient amount of the principal to pay ad valorem taxes to a school district upon the district's statement that it intends to make permanent improvements without first ascertaining whether or not the permanent improvements will be made, and how much of the district's portion of the permanent school fund will be used in construction of the permanent improvements.

It is important to note that under article VII, section 6 of the Texas Constitution counties are trustees of school lands for the benefit of the schools. Tex. Const. art. VII, §6. As the governing board of the county, the commissioners court acts as trustee in distributing the school fund under article VII, section 6b of the constitution. See Attorney General Opinions H-878 (1976); H-391, H-239 (1974); M-1104 (1972). As trustees, their powers must be strictly construed, and they may neither divest themselves of the powers conferred nor assume powers not conferred. See Potter County v. C. C. Slaughter Cattle Co., 254 S.W. 775 (Tex. Comm'n App., Sec. B, 1923, opinion adopted).

Section 6b lodges discretion of how and when to distribute the county school fund in the commissioners court. Tex. Const. art. VII, §6b. Neither the time of the distribution nor the manner of distribution is specified in the constitutional provision. On the contrary, the purposes for which the fund may be distributed are

clearly expressed. Id. Thus, the answer to your first question depends on what standard is applied to a trustee exercising his discretion to distribute trust funds to the beneficiaries.

In exercising discretionary powers, the trustee must act within the "bounds of a reasonable judgment." See First National Bank of Beaumont v. Howard, 229 S.W.2d 781, 783 (Tex. 1950). We believe that under this standard, a trustee is required to manifest the care, skill, prudence, and diligence of an ordinary prudent man engaged in similar business affairs. Cf. Attorney General Opinion M-1104 (1972) (prudent man standard is applicable to investments). Implicit within this standard is a duty to investigate and ascertain facts to make an informed judgment. Therefore, in response to your first question we conclude that it is within the commissioners court's duty as trustee to ascertain whether permanent improvements will be made and how much of the school district's portion of the permanent school fund will be used in the construction of permanent improvements before funds are distributed to school districts.

You next ask whether a school district may receive its portion of the fund and create a sinking fund or reinvest the funds in a certificate of deposit until it proceeds with its plans for permanent improvements. We believe that this situation is possible only if there is a justifiable expectation on the part of the county commissioners that the fund will be used within a reasonable time to satisfy the constitutional purposes. See Attorney General Opinion H-878 (1976). To distribute permanent school funds to a school district for the purpose of allowing the school district to invest the funds or establish a sinking fund with no impending expectation that the funds will be used for the constitutional purposes within a reasonable time would be contrary to the intent and purpose of article VII, section 6b. See Patterson v. City of Dallas, 355 S.W.2d 838 (Tex. Civ. App. - Dallas 1962, writ ref'd n.r.e.) (interpretation should not thwart legislative intent); appeal dismissed per curiam, 83 S.Ct. 873 (1963).

Article VII, section 6b outlines standards for members of the commissioners court for the investment of the school funds. The constitution makes no provision governing investments by a school district. General trust principles provide that a trustee cannot delegate the authority that has been conferred upon him. See West v. Hapgood, 174 S.W.2d 963 (Tex. 1943) (trustee may only delegate mechanical or ministerial acts).

However, this office briefly discussed a limited circumstance in which a school district sought permission to deposit its portion of the county school fund in an interest bearing account. See Attorney General Opinion H-878 (1975). In that opinion, it was argued that

> logically, the distribution of funds could not be
> immediately applied towards reduction of bonded
> indebtedness or construction of permanent improve-
> ments and that investing the funds in the interim
> period would insure that no earnings would be lost
> to the school children of the county.

Id. The opinion concluded that an investment by a school district was "permissible as long as the resulting income (interest) and the principal are not expended except as directed by [article VII, sec. 6b]." Attorney General Opinion H-878. The opinion clearly suggested that the investment would be temporary and that a determination by the county commissioners had been made to distribute the funds for the constitutional purpose. We believe that only under these limited circumstances may the school district be allowed to invest its portion of the fund once distributed by the county.

Finally you ask:

> If the commissioners court elects to distribute
> the corpus and interest of the permanent school
> fund to those districts satisfying the require-
> ments of article VII, is it incumbent upon each
> school district to determine the number of persons
> residing in the school district eligible by age
> for free education whether the persons are
> enrolled in private or public schools and then
> present that data to the commissioners court so
> that the commissioners court can make the distri-
> bution on a per scholastic basis.

Article VII, section 6b of the Texas Constitution provides that when more than one school district is located in the county, the commissioners court is required to distribute the funds to the various school districts on "a per scholastic basis." Tex. Const. Art. VII, §6b. In Attorney General Opinion H-47 (1973), this office defined the phrase "on a per scholastic basis" as "on the basis of the number of persons residing in the school district eligible by age for free education." The computation of students on a per scholastic basis has no relation to the average daily attendance. See Attorney General Opinion H-47 (1973); but see Educ. Code §16.006.

Prior to 1975, the legislature had provided for the taking of a scholastic census whereby the number of students of scholastic age residing in a particular school district could be determined, but in 1975 the provision was repealed. See Educ. Code §14.02, repealed by Acts 1975, 64th Leg., ch. 4, §1, at 6, eff. Feb. 13, 1975. We have not found nor have you informed us of any official method by which a tabulation may be made whereby the county funds may be distributed in

compliance with the constitutional requirement.  See Love v. City of Dallas, 40 S.W.2d 20 (Tex. 1931); see also Attorney General Opinion H-47 (1973).  Since sections 6 and 6b of the constitution are directed to the county commissioners court, we believe that it is incumbent upon the county commissioners as trustees of the fund to formulate a method to determine the scholastic population within a school district.  Again, we advise that these commissioners are required to manifest the care, skill, prudence, and diligence of ordinary prudent persons engaged in similar business affairs.

### S U M M A R Y

Before distributing the funds to school districts, the commissioners court, as trustees of the county school fund, is under a duty to investigate whether or not certain permanent improvements will be made by a school district. In ascertaining this information, the commissioners court is required to manifest the care, skill, prudence, and diligence of an ordinary prudent man engaged in similar business affairs.

Before funds are distributed to any school district in the county, the commissioners court must satisfy itself that the funds will be used within a reasonable time for either of the constitutional purposes.

It is incumbent upon the county commissioners as trustees of the fund to formulate a method to determine the scholastic population within a school district.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tony Guillory
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton
Sarah Woelk