TRANSAMERICAN LEASING
COMPANY, Petitioner,

v.

THREE BEARS, INC., et al.,
Respondents.

No. B–8172.

Supreme Court of Texas.

July 25, 1979.

Rehearing Denied Sept. 19, 1979.

Daniel R. Rutherford, San Antonio, for petitioner.

James N. Martin, San Antonio, Lang, Cross, Ladon, Boldrick & Green, Paul M. Green and Lawrence H. Rubenstein, Bruce Waitz and Van H. Johnson, Robert C. Patterson, San Antonio, for respondents.

POPE, Justice.

Transamerican Leasing Company sued Three Bears, Incorporated, for breach of three agreements by which Three Bears leased restaurant equipment. Transamerican also sued the G. S. and Gladys A. McCreless Trust and its trustees as guarantors on the leases. The trial court rendered judgment on the jury verdict against Three Bears and the McCreless Trust and its trustees in the amount of $109,447.76 for unpaid rentals, together with attorney fees and interest. The court of civil appeals reversed the trial court's judgment in part, holding that the McCreless Trust was not liable because its trustees did not have the power to bind the Trust as guarantors. 574 S.W.2d 193. Both Transamerican and Three Bears have applications for writs of error. We reverse that part of the judgment of the court of civil appeals which denied recovery against McCreless Trust and affirm the judgment of the trial court. We affirm the judgment which denied attorney fees to Transamerican.

Three Bears[1] operated a chain of hamburger stands in San Antonio. The McCreless Trust owned fifty percent of the stock in Three Bears. G. S. and Gladys A. McCreless are the settlors of the McCreless Trust. The settlors[2] are the beneficiaries of the Trust during their lifetime; their two daughters[3] will become the beneficiaries upon the death of the settlors provided they survive their parents; and the daughters' children[4] are contingent beneficiaries. During the time of these events, G. S. and Gladys A. McCreless were the beneficiaries. The trustees for the Trust are the settlors and their two daughters.[5]

In May and June of 1973, Three Bears signed three agreements for the leasing of large amounts of restaurant equipment to be supplied by Transamerican. The agreements had a term of sixty months. The McCreless Trust by separate agreements guaranteed Three Bears' performance on each of the leases. Three Bears made the first and last rental payments under each of the leases but failed to make any other payments.

Transamerican had borrowed the funds to purchase the equipment that it leased to Three Bears. While it was seeking permanent financing, it obtained interim financing by a short-term loan in the amount of $88,000 from the First National Bank of San Antonio. Transamerican's note to First National Bank was also guaranteed by the McCreless Trust and by G. S. McCreless individually. Transamerican did not obtain the permanent financing for its purchase of the equipment. Three Bears refused to make its rental payments, and when Transamerican defaulted on its note to the First National Bank, G. S. McCreless honored his guaranty and paid the bank. The bank assigned the $88,000 note to him. He took possession of the restaurant equipment and sold it to the Fair Development Company,[6] a partnership that was wholly owned by the McCreless family. Transamerican gave the Trust and Three Bears credit in the amount of $88,000 against the unpaid rentals owed under the leases and the guaranty agreements.

1. The ownership and control of Three Bears are as follows:

| Board of Directors | Stockholders | |
|---|---|---|
| G. S. McCreless | G. S. & Gladys A. McCreless Trust | 50% |
| Robert Durr (son-in-law) | Grace Ann McCreless Durr | 15% |
| Jim Martin (McCreless' attorney) | Jim Martin | 5% |
| Frank Hrncir (McCreless' accountant) | Frank Hrncir | 5% |
| Bill Chapman (originator of Three Bears) | Bill Chapman | 25% |

The McCreless Trust

Beneficiaries:

2. G. S. McCreless
   Gladys A. McCreless

3. Grace Ann McCreless Durr
   Merry Christine McCreless Nielsen

4. Kenneth Wesley Durr
   Robert Gordon Durr
   Cynthia Lynn Nielsen
   Carolyn Ann Nielsen
   [Cynthia and Carolyn are represented by a guardian ad litem.]

Trustees:

5. G. S. McCreless
   Gladys A. McCreless

   Grace Ann McCreless Durr
   Merry Christine McCreless Nielsen

6. The partners of Fair Development Company are:
   G. S. McCreless
   Gladys A. McCreless

Grace Ann McCreless Durr
Merry Christine McCreless Nielsen

*Transamerican's Application for Writ of Error*

Transamerican obtained a judgment against Three Bears and also against the McCreless Trust as guarantor. The jury refused to find that Three Bears' and McCreless Trust's obligations on the equipment leases were conditioned upon Transamerican's obtaining permanent financing for the leases and also that Transamerican's arrangement for permanent financing was a part of the consideration for the leases. There was evidence which supported those findings. The court of civil appeals reversed the judgment against the McCreless Trust, holding that the Trust had no power to obligate itself as a guarantor of the three lease agreements that Three Bears signed. We reverse that part of the judgment of the court of civil appeals.

■ The Trust instrument confers numerous broad powers on the Trust. Among these powers are the following:

With reference to the Trust estate created herein and every part thereof, the Trustees shall have the following rights and powers, without limitation and in *ADDITION TO POWERS* conferred by law:

\* \* \* \* \* \*

D. To invest and reinvest in such stocks, bonds and other securities and properties as they may deem advisable including stocks and unsecured obligations, undivided interests, interests in investment trusts, legal and discretionary common trust funds, mutual funds, *leasès, all without diversification as to kind or amount and without being restricted in any way by any statute or court decision (now or hereafter existing) regulating or limiting investment by fiduciaries.*

\* \* \* \* \* \*

S. The Trustees shall have such additional powers as the Grantors, by any future instrument in writing delivered to Trustees, may grant to them, the right to grant such powers being hereby expressly

reserved to the Grantors. [Emphasis added.]

Paragraph D gives the trustees power to invest in leases. The Trust beneficiaries, however, contend that a guarantee of another's performance under a lease does not constitute an investment in a lease. The term "invest" means to loan money on securities, to place it in business ventures or real estate, or to otherwise lay it out in an effort to produce revenue or income. BLACK'S LAW DICTIONARY 960 (4th ed. 1951). The Trust's guaranty of Three Bears' performance on its leases was not a gratuitous gesture; it was made as an effort to produce revenue for the Trust. The financial backing of Three Bears by the Trust was an important factor in Three Bears' obtaining its lease agreements with Transamerican, and the Trust held fifty percent of the stock in Three Bears. Thus, the benefits from Three Bears' success in the restaurant chain would ultimately accrue to the Trust. We consider the Trustees' action in guaranteeing Three Bears' performance to be one within their powers under the terms of the Trust instrument.

■ Paragraph S of the Trust instrument, which provides that the settlors may, in writing, confer additional power on the trustees, is an additional source of the trustees' power to guarantee the lease. Along with the other trustees, both G. S. and Gladys A. McCreless, the settlors, signed a written agreement authorizing Robert E. Durr and G. S. McCreless to make the Trust a party to the lease agreements themselves. Furthermore, in their answer to Transamerican's petition filed in this suit, the settlors and the other trustees stated that G. S. McCreless and Robert E. Durr had acted for them in executing the leases and thereby ratified the execution.

■ The Trust beneficiaries alternatively contend that the Trust cannot be bound as a guarantor because the trustees could not delegate their authority to enter into the leases to G. S. McCreless and Robert E. Durr. Only the latter two individuals

signed the leases as agents of the Trust. Their authority to do so is found in the above mentioned power-of-attorney instrument whereby the trustees authorized them to enter into lease agreements with Transamerican. The general rule is that a trustee may not delegate his discretionary power to another. *West v. Hapgood*, 141 Tex. 576, 174 S.W.2d 963 (1943). A trustee may, however, after determining how to exercise his discretion, give authority to another to carry out ministerial or mechanical acts to effectuate the trustee's decision. *Id.*

■ We consider the general rule against delegating authority inapplicable to this case. As parties to the power-of-attorney, the settlors, in effect, gave the trustees the express power of delegation. The granting of this express power to the trustees renders the delegation in this case permissible. *See* BOGERT, TRUSTS & TRUSTEES § 555 (2d ed. 1960). We need not decide whether, without such express power, the delegation would have been permissible.

All of the respondents, defendants in the trial court, urge that the trial court's judgment was fatally defective because there was no notice to each of the McCreless beneficiaries as required by Tex.Rev.Civ. Stat.Ann. art. 7425b–19 B which provides:

Whenever a trustee shall make a contract which is within his powers as trustee, or a predecessor trustee shall have made such a contract, and a cause of action arises thereon:

\* \* \* \* \* \*

B. No judgment shall be rendered in favor of the plaintiff in such action unless he proves that within thirty (30) days after the beginning of such action, or within such other time as the court may fix, and more than thirty (30) days prior to obtaining the judgment, he notified each of the beneficiaries known to the trustee who then had a present or contingent interest, or in the case of a charitable trust the Attorney General of Texas and any corporation which is a beneficiary or agency in the performance of such charitable trust, of the existence and nature of the action. Such notice shall be given by mailing copies thereof by registered mail addressed to the parties to be notified at their last known addresses.

When this matter was first called to the attention of the trial court, it vacated the original judgment while it still had jurisdiction to do so. *Transamerican Leasing Company v. Three Bears, Inc.*, 567 S.W.2d 799 (Tex.1978). After the judgment was vacated, Transamerican caused notice of the suit to be sent to the beneficiaries, and the court also appointed a guardian ad litem to represent the two minor contingent beneficiaries. The trial court also ordered the beneficiaries to show cause why judgment should not be rendered in the case. The beneficiaries' response to the show cause order was that a new trial was mandatory since the notice was not sent until after the jury had returned its verdict. On August 17, 1976, the trial court again rendered judgment for Transamerican against both Three Bears and the McCreless Trust.

■ The beneficiaries acknowledge that the notices complied with the statutory requirement that they be sent "more than thirty (30) days prior to obtaining the judgment," but insist that the technical compliance did not allow the beneficiaries the opportunity to participate in the trial of the case. There are undoubtedly many instances in which a notice that is sent after verdict would not be sufficient to protect a beneficiary's interest in a trust. The beneficiaries in this instance have not been able to show anything they would have done differently or in addition to what was done in defense of the Trust liability if they had actually participated in the trial. Prior to the court's judgment on August 17, 1976, the beneficiaries presented nothing to the court to suggest any beneficiary had been prejudiced by a failure to receive an earlier notice, or that the trial would have been conducted any differently if all beneficiaries had participated. The trustees were also the principal beneficiaries, and they answered and ably participated in the defense of the case. None of the beneficiaries who did not participate in the trial have ever asserted any conflict between their

interests and the trustee-beneficiaries or that their interests were not adequately represented by the trustees. In the absence of a conflict of interest or of a pleading that they were inadequately represented, the beneficiaries who did not participate in the trial were not necessary parties to the case. *Cf. Mason v. Mason,* 366 S.W.2d 552 (Tex.1963). The requirement for a notice does not always require notice in time for trial, since the statute places some discretion with the court to require the notice "within such other time as the court may fix" so long as it is thirty days before judgment.

■ Transamerican also contends that the court of civil appeals erred in denying its claim for attorney fees. It is our opinion that the court of civil appeals correctly denied the attorney fees. The leases provided that Transamerican could recover attorney fees in the event it had to repossess the restaurant equipment from Three Bears.[7] Transamerican did not repossess the equipment, but it argues that it should be allowed attorney fees because it was prevented from repossessing the property. McCreless had purchased Transamerican's note from the bank, and he then repossessed the equipment. Transamerican relies upon the rule that when the obligation of a party depends upon the performance of a condition, and the fulfillment of that condition is prevented by the act of the other party, the condition is considered as fulfilled. *Sanderson v. Sanderson,* 130 Tex. 264, 109 S.W.2d 744, 749 (1937). The rule is not applicable to this case. Although G. S. McCreless took possession of the equipment and conveyed it to Fair Development Company, a McCreless-owned partnership, the record does not show that Transamerican ever attempted to obtain possession of the equipment or made any effort to prevent Mr. McCreless from taking the property. In fact, nothing in the record suggests that Transamerican ever intended to repossess the property.

### Three Bears' Application

■ Three Bears has filed a conditional application for writ of error. It contends that there is no evidence to support the jury finding that Transamerican sustained damages in the amount of $109,447.76. There is evidence in support of the jury finding of damages that Three Bears failed to make fifty-eight rental payments, amounting to more than $170,000.

■■ Three Bears also contends that the trial court erred in excluding evidence which tended to show that Three Bears and Transamerican had an oral agreement whereby Three Bears had an option to purchase the restaurant equipment. The excluded evidence contained testimony by G. S. McCreless to the effect that the parties intended the difference between the total of the rental payments and the purchase cost of the equipment to be paid as interest. A witness for Three Bears calculated the total interest to be in excess of twenty percent per annum. It is Three Bears' contention that all of this evidence should have been admitted to establish a violation of the usury statutes applicable to both individual and corporate borrowers. We hold that the evidence was properly excluded as violative

---

7. The provision states:

Upon such repossession of the Leased Property, the Lessor shall have the right to:

A. Rerent the Leased Property and credit the rentals collected thereunder during the balance of the term of this Lease upon the unpaid balance of the rents hereunder after first deducting the costs and expenses of repossession (including an attorney's fee of 15% of the balance of the rent due if an attorney was used in connection therewith), storage until rerenting, reconditioning and repair of the Leased Property and rerenting, paying any overplus to the Lessee, the Lessee to remain liable for any deficiency, or

B. If, in the sole opinion of the Lessor it would be impractical or impossible to rerent the Leased Property, sell the Leased Property at public or private sale with the right of Lessor or Assignee to purchase any or all of the Leased Property at such sale, pay all charges and expenses incurred by Lessor or Assignee in connection with or incidental to the repossession (including an attorney's fee of 15% of the amount realized, if an attorney is used in connection therewith), storage and sale, and credit the remainder of the sale price to the unpaid balance of the rent hereunder, the Lessee to remain liable for any deficiency.

478 ■ ▬▬▬▬▬▬▬▬▬▬▬

of the parol evidence rule. The written lease agreements contain no provision giving Three Bears an option to purchase the equipment. Furthermore, each lease states that it "constitutes the sole agreement of the parties with respect to the subject matter thereof." Thus, the claimed purchase option agreement is inconsistent with the lease contracts and not merely collateral to them. When such a purchase option agreement is inconsistent with, and not merely collateral to, a lease contract, the parol evidence rule applies. *Hobbs Trailers v. J. T. Arnett Grain Co., Inc.*, 560 S.W.2d 85 (Tex. 1977).

■ Three Bears contends, however, that the parol evidence rule is not applicable to situations in which a party seeks to show that an apparently valid contract is really a mask for usury. As authority, Three Bears cites cases in which courts have held that parol evidence is admissible to show that a *loan* agreement, valid on the face of the written instrument, is in fact, a usurious loan. *See, e.g., Smith v. Stevens*, 81 Tex. 461, 16 S.W. 986 (1891); *F. B. & D., Inc. v. Nathan Alterman Electric Co.*, 394 S.W.2d 821 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.). These cases are not applicable to this particular case. In order for Three Bears to establish usury, it must first establish that the leases were not mere leases but were, instead, lease-purchase agreements. Without parol evidence of the purchase option, the lease agreements cannot constitute loan agreements.

■ Three Bears also presents the contention that the lease agreements are unenforceable because they are unconscionable within the meaning of Texas Business and Commerce Code provisions governing sales of goods. Tex.Bus. & Comm.Code.Ann. art. 2.302. Assuming, without deciding, that the Code provision on unconscionability applies to these leases, we agree with the trial court's conclusion that the leases are not unconscionable. The terms of the contracts are neither harsh nor oppressive, and nothing in the record suggests that Three Bears, or the Trust, was in an unfair bargaining position at the time the agreements were made.

Three Bears' remaining points of error concerning the admission and exclusion of certain evidence are also overruled.

The judgment of the court of civil appeals which affirmed the judgment of the trial court against Three Bears and which denied Transamerican's recovery of attorney fees is affirmed. We reverse that part of the judgment of the court of civil appeals which reversed the judgment of the trial court for damages in the sum of $109,447.76 against the McCreless Trust and its trustees. We affirm that part of the trial court's judgment. Attorney fees for the guardian ad litem and all costs of court are adjudged against Three Bears, the McCreless Trust and its trustees.

SPEARS, J., not sitting.