REPUBLIC NATIONAL BANK OF DALLAS, Trustee et al., Appellants,

v.

ROBERT VENTURES, LTD. et al., Appellees.

No. 11–81–065–CV.

Court of Appeals of Texas, Eastland.

July 29, 1982.

Rehearing Denied Aug. 26, 1982.

**516**

G. Leroy Street, Geary, Stahl & Spencer, Jerry Lastelick, Lastelick, Anderson & Hilliard, Dallas, for appellants.

Roy L. Stacy, Calhoun, Spillman & Stacy, Dallas, for appellees.

DICKENSON, Justice.

The controlling issue is whether the trust beneficiaries were given adequate and timely notice of suit, as required by the Texas Trust Act,[1] before judgment was rendered against the trust for $204,192.08 plus costs and postjudgment interest. We reverse and remand.

The suit arose from a contract of sale involving 15.63 acres of land which were owned by the trust. The first contract of sale, dated November 1, 1977, was signed by Republic National Bank of Dallas, Trustee for W. Terry Rhodes Trust, as Seller, and by Robert Ventures, Ltd., as Purchaser. That contract was subsequently replaced by two contracts of sale, dated November 16, 1977, which together covered the same land and named the same parties as purchaser and seller. Various letter agreements were executed in connection with the transaction. One of them granted "an option to extend the closing for an additional one hundred eighty (180) days provided that purchaser pay to seller the sum of $5,000.00. . . ." That sum was paid to the escrow agent, and it is disputed as to whether the trustee bank knew of that payment and agreed to that modification of the terms. During that 180 day period, the trustee bank's lawyer wrote two letters to seller. The letter of May 26, 1978, stated the $5,000.00 option payment had not been made and that: "Accordingly, it appears that the contract has expired by its own terms." The letter of July 6, 1978, referred to the earlier letter and then declared: "Accordingly, you are

---

1. Section 19 of that Act, Tex.Rev.Civ.Stat.Ann. art. 7425b–19 (Vernon Supp.1982) provides in pertinent part:

No judgment shall be rendered in favor of the plaintiff in such action unless he proves that within thirty (30) days after the beginning of such action, or within such other time as the court may fix, and more than thirty (30) days prior to obtaining the judgment, he notified each of the beneficiaries known to the trustee who then had a present or contingent interest, or in the case of a charitable trust the Attorney General of Texas and any corporation which is a beneficiary or agency in the performance of such charitable trust, of the existence and nature of the action. Such notice shall be given by mailing copies thereof by registered mail addressed to the parties to be notified at their last known addresses. The trustee shall furnish the plaintiff a list of the beneficiaries or persons having an interest in the trust estate, and their addresses, if their whereabouts are known to the trustee, within ten (10) days after written demand therefor, and notification of the persons on such list shall constitute compliance with the duty placed on the plaintiff by this section.

Any beneficiary, or in the case of charitable trusts the Attorney General of Texas, and any corporation which is a beneficiary or agency in the performance of such charitable trust, may intervene in such action and contest the right of the plaintiff to recover. If any beneficiary is a minor or has been adjudged incompetent, the court shall appoint a guardian ad litem, whose duty it shall be to defend such action.

advised that the Seller under the contracts referenced above considers all contractual relationships between it and Robert Ventures, Ltd. terminated, cancelled and without further legal effect." The land was then sold to Loewi Realty Corporation. This suit was filed on November 9, 1978. The jury trial began on March 26, 1980, and the verdict was received on April 3. The first judgment was signed on May 23 and vacated on June 2 in an effort to comply with Article 7425b–19, supra. After the co-trustee of the trust [2] and the beneficiaries [3] were given notice under Section 19 of the Texas Trust Act, supra, a hearing was held on October 24, 1980, to give them an opportunity to show cause why judgment should not be rendered on the jury's verdict. The new final judgment was signed on December 8, 1980. The trustee bank appeals. A separate appeal has been filed by the trust beneficiaries.[4] We reverse and remand.

The jury's verdict may be summarized as follows:

Issue 1A: The contracts of sale were breached or repudiated by the Republic National Bank of Dallas, Trustee.

Issue 1: The breach resulted from either the letter of May 26, 1978, or the letter of July 6, 1978.

Issue 2: The May 26, 1978, letter constituted the breach of contract.

Issue 3: The bank waived the right to require the $5,000 option money be paid directly to the bank rather than the title company.

Issue 4: The bank is estopped from maintaining that the $5,000 option money was not properly paid to the correct party.

Issue 5: No such issue.

Issue 6: We do *not* find in relation to the contracts (which replaced the original contract) the parties intended that neither would be giving up the right to sue the other for damages.

Issue 7: The bank waived the contractual provision limiting the right of Robert Ventures, Ltd. to sue for damages.

Issue 8: The bank is estopped from asserting the contractual provisions limiting the right of Robert Ventures, Ltd. to sue for damages under the contract.

Issue 9: The parties intended for the hold harmless agreement to apply only to claims made by third parties.

Issue 10: There was a valid contract on May 26, 1978, for the purchase of the property.

Issue 11: We do *not* find that Loewi Realty Corporation interferred with that contract.

Issues 12 and 13: No answers required.

Issue 14: There was a valid contract on July 6, 1978, for the purchase of the property.

Issue 15: We do *not* find that Loewi Realty Corporation interferred with that contract.

Issues 16 and 17: No answers required.

Issue 18: We do *not* find that Robert Ventures, Ltd. waived its right to bring a suit for damages against the bank as trustee.

Issue 19: We do *not* find that Robert Ventures, Ltd. is estopped from bringing a suit for damages against the bank as trustee.

Issue 20: We do *not* find that the bank as trustee suffered any loss, costs or expenses as a result of the substitution of the two contracts of sale for the original contract of sale.

Issue 21: The fair market value of the property on May 26, 1978, was $748,927.08 ($1.10 per square foot).

---

**2.** The settlor's widow, Ruth S. Rhodes, is co-trustee. She was not a party to the lawsuit prior to the post verdict proceedings.

**3.** The income beneficiaries are Ruth S. Rhodes, Terry Jack Rhodes and Robert William Rhodes. The contingent beneficiaries, Justin Bonnet Rhodes, Ryan Paul Rhodes and Lisa Ann Posey Rhodes, are minors. A guardian ad litem was appointed to represent them, and his report to the court was filed on October 24, 1980.

**4.** This appeal was transferred from the Dallas Court of Appeals to this court on October 1, 1981. See Tex.Rev.Civ.Stat.Ann. art. 1738 (Vernon Supp.1982).

Issue 22: The fair market value of the property on July 6, 1978, was $769,352.36 ($1.13 per square foot).

Issue 23: $00 would fairly and reasonably compensate the bank as trustee for any loss, costs or expenses resulting from the substitution of the two contracts of sale for the original contract of sale.

The guardian ad litem's report to the court, which was filed during the "show cause" hearing on October 24, 1980, reflects the investigation which was made to protect the rights of the minor beneficiaries and concluded that a new trial was required.

The guardian's report states in pertinent part:

3.

It is uncontradicted that the minor beneficiaries for whom the undersigned is guardian ad litem were not participants at any stage of the case until the appointment of the guardian ad litem after the trial on the merits, and none of the other beneficiaries answered as defendants and actively participated in the trial.

4.

The Rhodes Trust was not a Named Party Defendant. The Trust Indenture names the Republic National Bank and Mrs. Rhodes as co-trustees. Mrs. Rhodes was not a named party defendant and did not participate in the lawsuit at any stage.

5.

Jerry Lastelick, Esq., represented the Republic National Bank, Trustee, in all the transactions between the Republic National Bank and Robert Ventures, Ltd., from the outset. It is undisputed that Mr. Lastelick had direct contact with Mr. Goldner, the only apparent officer of Robert Ventures, Ltd. Mr. Lastelick was the trial counsel for the Republic National Bank, Trustee, Defendant. As such, he could not and did not testify at the trial on the merits.

6.

There appears to be at least one crucial ultimate issue in this case which, apparently, was not adequately developed and presented to the jury for its determination.

Mr. Goldner, on behalf of Robert Ventures, Ltd., had a telephone conversation with Mr. Lastelick, on behalf of Republic National Bank, on or about June 8, 1978.

Mr. Lastelick has stated that had he testified at the time of trial, he would have stated unequivocally that during the conversation, Mr. Goldner represented as a fact that he had his financing and that, as a result, he and Mr. Goldner agreed to have the final closing contemplated by the contract around June 14, 1978; and, since he had heard nothing further from Mr. Goldner prior to July 6, 1978, that he concluded Mr. Goldner had breached the contract, as amended by the June 8, 1979, telephone conversation, and sent Mr. Goldner a letter finally terminating the contract.

Mr. Goldner disputes that the conversation and agreement as described by Mr. Lastelick took place.

Mr. Lastelick did not testify as to these matters at the trial. As the trial attorney for Republic National Bank, he was prohibited from testifying. Thus, no conflicting evidence was presented and the resulting ultimate issue was not submitted to the jury.

7.

The exhibits reveal that the November 16, 1977 contract of sale contemplated a sales price of $.80 per square foot for approximately 15.63 acres of land; that subsequently, *at the instance of Mr. Goldner*, the contract was divided into two contracts of sale, one for 9.59 acres of land at a purchase price of $544,734, or approximately $1.30 per square foot, and 6.04 acres of abutting land at a purchase price of $1.00, or less than $.000004 per square foot.

The exhibits and Mr. Goldner's deposition further reveal that Robert Ventures,

Ltd. was, in truth and in fact, a promoter without sufficient capital to buy the property, and that it was attempting to arrange for a mortgage to build apartments upon the 9.59 acre tract, obviously using the land at its artificially enhanced value in seeking the mortgage financing and equity investors.

This situation indicates the possibility that Robert Ventures, Ltd. was materially misrepresenting facts to potential lenders and investors, and that, had these facts been discovered, no reputable lender or investor would have done business with this company. If this be the case, it would never have been able to obtain either equity or debt financing. Further, if this be the case, the jury could reasonably have been anticipated to scrutinize more closely and reject the testimony of Mr. Goldner on all other material facts.

The depositions and exhibits do not reflect that this matter was not (sic) pursued in discovery or at the trial.

### 8.

Mr. Goldner testified in his deposition taken on August 8, 1979, that Robert Ventures, Ltd. is a New York corporation, possessing a permit to do business in the State of Texas. The depositions and exhibits do not reveal that any attempt to verify this matter was made.

I have been advised by an Assistant Secretary of State that a permit to do business in the State of Texas was not issued until July 12, 1978. I have been further advised that it has not made any of the filings required by statutes for either 1979 or 1980, and that it is not in good standing.

This investigation presents two defenses which were not raised by the pleadings, or, apparently, at the trial:

(a) Since this New York corporation did not have a permit to do business at the time it entered into the contract to purchase land in Texas to be used to build apartments which it would then rent, and did not have such a permit at any time until after the contract had been terminated, the contract could well be deemed to be unenforceable;

(b) Since this New York corporation was not in good standing in 1979 and 1980, it should not be allowed to prosecute and obtain judgment against Republic National Bank, Trustee, and a resulting satisfaction of this judgment from the trust, of which there are minor beneficiaries.

### 9.

Your guardian ad litem is advised that the Republic National Bank, Trustee, made no attempt to present to the jury testimony of an independent expert as to the value of the land in question. The exhibits and depositions further indicate that the land in question was sold by the trustee at a date subsequent to May, 1978, for about $.85 per square foot. The jury found a value of $1.10 per square foot in May, 1978.

Your guardian ad litem is further advised that there are independent experts who will testify that the value was approximately $.70–$.80 per square foot in May, 1978. If this is the case, the jury may well have found a substantially lower market value.

### 10.

Your guardian ad litem would respectfully show the Honorable Court that had he been appointed to represent the minor beneficiaries, the above matters would have been thoroughly explored and developed prior to trial, and presented to the Court and jury through pleadings and evidence; and, further, in the considered opinion of your guardian ad litem, that the failure to develop and present these matters, whether considered separately or cumulatively, adversely affected the interests of the minor beneficiaries.

The beneficiaries have briefed six points of error. Point of error number one controls our disposition of this case, and we need not reach the beneficiaries' other points. We sustain the first point of error, holding the trial court erred in ruling that

there was no showing of any sufficient harm or prejudice to the beneficiaries to justify a retrial on the merits of this case.

The Supreme Court of Texas dealt with a similar proceeding in a factually different situation in *Transamerican Leasing Company v. Three Bears, Inc.*, 586 S.W.2d 472 at 476 (Tex.1979), stating:

When this matter was first called to the attention of the trial court, it vacated the original judgment while it still had jurisdiction to do so. *Transamerican Leasing Company v. Three Bears, Inc.*, 567 S.W.2d 799 (Tex.1978). After the judgment was vacated, Transamerican caused notice of the suit to be sent to the beneficiaries, and the court also appointed a guardian ad litem to represent the two minor contingent beneficiaries. The trial court also ordered the beneficiaries to show cause why judgment should not be rendered in the case. The beneficiaries' response to the show cause order was that a new trial was mandatory since the notice was not sent until after the jury had returned its verdict. On August 17, 1976, the trial court again rendered judgment for Transamerican against both Three Bears and the McCreless Trust.

The beneficiaries acknowledge that the notices complied with the statutory requirement that they be sent "more than thirty (30) days prior to obtaining the judgment," but insist that the technical compliance did not allow the beneficiaries the opportunity to participate in the trial of the case. *There are undoubtedly many instances in which a notice that is sent after verdict would not be sufficient to protect a beneficiary's interest in a trust.* The beneficiaries in this instance have not been able to show anything they would have done differently or in addition to what was done in defense of the Trust liability if they had actually participated in the trial. Prior to the court's judgment on August 17, 1976, the beneficiaries presented nothing to the court to suggest any beneficiary had been prejudiced by a failure to receive an earlier notice, or that the trial would have been conducted any differently if all benefici-

aries had participated. The trustees were also the principal beneficiaries, and they answered and ably participated in the defense of the case. None of the beneficiaries who did not participate in the trial have ever asserted any conflict between their interests and the trustee-beneficiaries or that their interests were not adequately represented by the trustees. In the absence of a conflict of interest or of a pleading that they were inadequately represented, the beneficiaries who did not participate in the trial were not necessary parties to the case. Cf. *Mason v. Mason*, 366 S.W.2d 552 (Tex.1963). The requirement for a notice does not always require notice in time for trial, since the statute places some discretion with the court to require the notice "within such other time as the court may fix" so long as it is thirty days before judgment. (emphasis added)

Unlike the factual situation in *Three Bears*, none of the beneficiaries participated in the trial of this case, and the trust beneficiaries have now shown matters of defense which they would have handled "differently or in addition to what was done in defense of the Trust liability if they had actually participated in the trial." The guardian's report and the testimony at the "show cause" hearing on October 24, 1980, suggest that the beneficiaries were prejudiced by their failure to receive an earlier notice and that the trial would have been conducted differently if all beneficiaries had participated. This is particularly true as to the minor beneficiaries, and Section 19, supra, specifically provides in mandatory language:

If any beneficiary is a minor or has been adjudged incompetent, the court *shall appoint* a guardian ad litem, *whose duty it shall be* to defend such action. (emphasis added)

The post verdict appointment of a guardian ad litem did not adequately protect the rights of the minor beneficiaries in this case, particularly in view of the allegations of conflicts between the beneficiaries and

the corporate trustee and the allegations that the minor beneficiaries were inadequately represented.

We hold that under the facts of this case the notice which was sent after the verdict was not sufficient to protect the beneficiaries' interest in the trust. The cause must, therefore, be remanded for a new trial.

The bank has briefed twenty points of error. We need not pass upon the factually insufficient points [5] under *In re Kings Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951) or the points challenging the instructions and definitions given to the jury,[6] for our disposition of the beneficiaries' first point of error already requires a remand for new trial. We are obligated to rule on the bank's points [7] which, if sustained, would require a rendition of judgment in the bank's favor. We have considered those points of error, and they are overruled. See

*Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 at 265 (Tex.1974) which states:

When a party asserts that there is no evidence to support jury findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings.

Under that test, we find that there is some evidence to support the jury's answers to the challenged special issues.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

**5.** Points 4, 5, 7, 8, 13 and 14 are factually insufficient or great weight points which challenge the jury's answers to special issues 7, 8, 1A, 1 and 2.

**6.** Points 15, 16, 17 and 18.

**7.** Points 1 and 2 become immaterial in view of the jury's answers to special issues 7 and 8. Points 3, 6 and 12 are no evidence points which challenge the jury's answers to special issues 7, 8, 1A, 1 and 2. We hold that there is some evidence to support the answers to these issues. Points 9 and 10 claim that there were no pleadings to support a recovery under the theories of waiver or estoppel and that these issues were not tried by consent. There was no objection to the submission of these issues based

upon a lack of pleading, and those objections were waived under Tex.R.Civ.P. 274. Point 11 argues that the letter of May 26 (see special issue 2), as a matter of law, did not constitute any repudiation or breach of contract. Since there is some evidence to support the jury's answer to special issue 2, Point 11 is overruled. Point 19, arguing the trial court erred in overruling the bank's motion for judgment non obstante veredicto, is overruled. Point 20 argues that the trial court erred in failing to grant the bank a judgment against David Goldner under the provision of his "hold harmless" letter. This point is overruled because of the jury's unchallenged answers to special issues 20 and 23.