**BILMAR DRILLING, INC.,**
**Plaintiff-Appellant,**

v.

**IFG LEASING CO., et al.,**
**Defendants-Appellees.**

**BILMAR DRILLING, INC.,**
**Plaintiff-Appellee,**

v.

**IFG LEASING COMPANY,**
**Defendant-Appellant.**

Nos. 85–1605, 85–1748.

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1986.

Rehearing Denied Sept. 4, 1986.

Daniel O'Keefe, David Ranheim, Minneapolis, Minn., for plaintiff-appellant.

Randy Lee, Joseph L. Hood, Jr., El Paso, Tex., for defendants-appellees.

Before Gee and Higginbotham, Circuit Judges, and Harvey,[*] District Judge.

GEE, Circuit Judge:

In today's case, Bilmar Drilling, Inc. appeals from the district court's order that it take nothing on its claims of, among other things, usury and RICO violations. IFG Leasing Co. appeals from the district court's later denial of its motions for attorney's fees and expenses. We affirm the district court's judgment.

### I. *Facts and Procedural Posture*

This case involves a financing agreement between Bilmar Drilling, Inc. ("Bilmar"), IFG Leasing Co. ("IFG") and Inter-Regional Financial Group, Inc. ("Inter-Regional"), IFG's parent. William Burnham, Sr. founded Bilmar in 1981 for the purpose of obtaining and operating an oil drilling rig. After failing to locate traditional bank financing for a rig already on order, Bilmar contacted IFG.

The district court found that on September 30, 1981, Bilmar and IFG agreed that Bilmar would purchase the drilling rig for $570,000 at the end of a lease term identified in a document executed on October 2, 1981. Under the terms of this lease, Inter-Regional, as owner, agreed to lease the rig to Bilmar and Bilmar agreed to pay an $881,280 first-month rental followed by 84 monthly payments of $99,079.74. Between October 2 and the end of 1981, Bilmar and IFG entered into several modifications of the original agreement. First, rather than fixed monthly payments, payments were to float based on a formula tied to Citibank's prime. Second, the agreement would be governed by and construed in accordance with Texas law. Third, Trinity Research Corp., an IFG sister corporation, was substituted as the rig's owner and lessor, with IFG serving as Trinity's collection agent.

Bilmar received the rig in December 1981, at which time IFG paid the interim lender $3,796,800. Bilmar began making rental payments in January 1982. In November 1983, IFG agreed to reduce Bilmar's payments for the following 14 months in exchange for Bilmar's increasing the number of payments due.

Bilmar filed this action in August 1984, alleging usury and conspiracy to commit usury with respect to the 1981 financing agreements. Bilmar later added a RICO claim. The district court denied motions to amend to add DTPA and common law fraud allegations. On cross motions for summary judgment, the district court determined that (1) the financing agreements represent a loan, not a lease, (2) the acceleration clause in the agreement is not usurious, (3) there was no intent to enter into a usurious contract, (4) IFG did not charge usurious interest, (5) 12 U.S.C. § 86a preempts Tex.Rev.Civ.Stat.Ann. art. 5069–1.03, (6) the RICO claim fails because there was no pattern of racketeering activity and because IFG and Inter-Regional were not in a business that RICO contemplates, and (7) Bilmar's claim of conspiracy to commit usury fails. Based on these findings, the district court ordered that Bilmar take nothing against Inter-Regional. After a hearing to determine the interest rate paid in the transaction, the district court further concluded that (1) an interest rate could be calculated, (2) Bilmar had not alleged a usury claim under Texas or federal law, and (3) IFG was not liable for usury for assessing accrued charges, service charges, and interest on late payments. For these reasons, the district court held that Bilmar take nothing against IFG. The court later denied defendants' motion for attorneys' fees and expenses.

---

[*] District Judge for the Eastern District of Michigan, sitting by designation.

## II. *Loan or Lease*

The first issue that we must consider on this appeal is whether the district court erred in concluding that, for purposes of the Texas usury statutes, the agreement between Bilmar and IFG represents a loan, not a lease. The court based this conclusion on its finding that Bilmar was obligated to purchase the rig at the end of the lease term.[1] In so holding, the court rejected IFG's argument that the parol evidence rule barred the "put agreement" from evidence. The court reasoned that the parol evidence rule did not apply because the put agreement was

> offered not for the purpose of being used as a part of the contract, nor for varying the terms of the transaction. Rather, the purpose of the document is to demonstrate that the transaction embodied in the writing, i.e. Lease N. 00553, is not what it purports to be. The put letter merely shows that the transaction is not a lease but is a loan.

Record, Vol. 5 at 875.

IFG argues that the parol evidence rule should have barred the put agreement from evidence. IFG bases its argument on the presence of an integration clause in the October 2 lease agreement and on two Texas Supreme Court cases that it contends are on point, *Transamerican Leasing Co. v. Three Bears, Inc.*, 586 S.W.2d 472 (Tex. 1979), and *Hobbs Trailers v. J.T. Arnett Grain Co.*, 560 S.W.2d 85 (Tex.1977). Bilmar replies that on various occasions IFG recognized the validity of the $570,000 put obligation, hence it is estopped from denying its existence and legal effect. But, according to Bilmar, even before the Court can consider IFG's parol evidence argument, we must first determine that IFG's printed lease agreement constitutes the parties' sole agreement with respect to the rig. Bilmar claims that the lease agreement, floating payment addendum, and put agreement are but one agreement; the merger clause does not control whether the lease is an integrated agreement. Bilmar then distinguishes *Three Bears* and *Hobbs Trailers* on the grounds that they did not involve "a single transaction evidenced by multiple instruments." Bilmar's final argument is that because the put agreement is clearly collateral to the lease the parol evidence rule does not bar it from evidence.

Our analysis begins with *Three Bears* and *Hobbs Trailers.* The evidence at issue in *Hobbs Trailers* was testimony tending to establish the existence of a purchase option at the end of the lease term. The Supreme Court concluded that the testimony could not be used to contradict the terms of the lease agreement:

> The present contract between the parties ... was complete and final, and it expressly excluded any other agreements. A lease of the trailers with an express agreement that the lessee will not, by paying the rental, acquire any right, title, or interest in the equipment is inconsistent with a contemporaneous collateral agreement that the lessee will acquire title.

560 S.W.2d at 87.[2] In *Three Bears*, the evidence at issue was testimony that the parties "intended the difference between

---

1. In determining whether a transaction styled as a lease is subject to the Texas usury statutes, Texas courts follow two alternative, noncumulative tests. If the contract contains a purchase option, the contract is subject to the usury statutes if (1) the purchase price is nominal relative to the fair market value of the object or (2) if the option leaves the lessee with no sensible alternative but to exercise the option. *Horton v. Dental Capital Leasing Corp.*, 649 S.W.2d 655, 657 (Tex.App.—Texarkana 1983, no writ).

2. The Court relied on two contract provisions:
 4. This transaction is a leasing and not a sale, conditional or otherwise. The parties understand and agree that Lessee does not acquire hereunder, or by the payment of rental hereunder, any right, title, or interest in or to said equipment or any thereof, except the right to possess and use said equipment so long, and only so long, as Lessee shall not be in default hereunder.
 13. This instrument contains the entire agreement between the parties pertaining to the subject matter. No agreements, representations or understandings, not specifically contained herein shall be binding upon any of the parties hereto unless reduced to writing and signed by the parties to be bound thereby.
 560 S.W.2d at 87.

the total of the rental payments and the purchase cost of the equipment to be paid as interest." 586 S.W.2d at 477. This evidence would also have tended to show the existence of a purchase agreement between the lessor and the lessee. The district court had excluded the evidence and the Supreme Court affirmed, reasoning that

> [t]he written lease agreements contain no provision giving Three Bears an option to purchase the equipment. Furthermore, each lease states that it "constitutes the sole agreement of the parties with respect to the subject matter thereof." Thus, the claimed purchase option agreement is inconsistent with the lease contracts and not merely collateral to them. When such a purchase option agreement is inconsistent with, and not merely collateral to, a lease contract, the parol evidence rule applies. *Hobbs Trailers v. J.T. Arnett Grain Co., Inc.,* 560 S.W.2d 85 (Tex.1977).

586 S.W.2d at 477–78. *See also Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Development Co.,* 626 F.2d 401, 410–11 (5th Cir.1980), *vacated on other grounds,* 642 F.2d 744 (5th Cir.1981) (distinguishing *Three Bears* and *Hobbs Trailers* from facts before it on basis of integration agreement).

██ The question for this Court is whether the put is a prior agreement inconsistent with the October 2 lease agreement. It is. The lease expressly provides that it "constitutes the entire agreement between lessor and lessee...." The lease further provides that at the end of the lease term the lessee is to return the rig to the Lessor. Contrary to Bilmar's representations, then, the put agreement is inconsistent with the lease terms—a purchaser would not return the rig to the seller—and, as such, should have been excluded from evidence under the parol evidence rule. *Three Bears,* 586 S.W.2d at 477–78; *Hobbs Trailers,* 560 S.W.2d at 87.

██ Bilmar's further argument that, by consistently ratifying and acknowledging the continuing existence of the put agreement, IFG and Inter-Regional are estopped

from denying its existence fails. Because the put agreement is inconsistent with the lease, it is unenforceable. Subsequent conduct cannot, on an estoppel theory, create a contract where none exists; estoppel operates to deny enforcement of an existing contractual right. *Boddy v. Gray,* 497 S.W.2d 600, 605 (Tex.Civ.App.—Amarillo 1973, writ ref'd).

Because the district court erred in considering the put agreement in its assessment of whether the lease agreement is subject to the Texas usury statutes and because IFG and Inter-Regional are not estopped from relying on the integration clause and the parol evidence rule, several consequences follow. To begin with, the district court's determination that the lease is subject to the Texas usury statutes is incorrect. Once we pull this thread, however, most of the remainder of this appeal unravels. Although we reach the same result, had the district court ruled correctly it would not have analyzed whether the lease was usurious. Nor would it have analyzed the preemption arguments, the RICO claims, or the conspiracy claims. The issues presented on this appeal that pertain to this analysis are therefore moot. What remains for our consideration is Bilmar's contention that the district court erred in not granting it leave to amend to allege a claim for fraudulent inducement and IFG's assertion that the district court erred in not awarding it attorneys' fees and expenses.

### III. *Denial of Bilmar's Motions to Amend*

Bilmar contends that the district court erred in denying its various motions to amend its complaint to add clams based on fraud, fraud in the inducement, and the Deceptive Trace Practices Act ("DTPA"), Tex.Bus. & Comm.Code Ann. § 17.41 *et seq.* The standard of review is whether the district court abused its discretion in denying the motions. *Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Nilsen v. City of Moss Point, Miss.,* 621 F.2d 117, 122 (5th Cir.1980).

The facts relevant to this issue are as follows: Bilmar filed its original complaint in August 1984. At that time it notified IFG and Inter-Regional of its intent to amend its complaint to allege violations under the DTPA.[3] The following May, the parties agreed to permit amended pleadings. The district court granted leave to amend upon a joint motion filed in June. Bilmar's amended complaint, filed on June 17, 1985, included a DTPA count. IFG and Inter-Regional filed an amended joint answer and counterclaim on the same date. Later that month, the district court amended its order, now disallowing the DTPA count. On July 12, Bilmar sought leave to file a second amended complaint. The district court, acting pursuant to an oral order made during a pre-trial conference, denied Bilmar leave "to add claims of fraudulent inducement, fraudulent threats, duress, unfair debt collection and Texas Deceptive Trade Practices."

With respect to its DTPA claim based on a theory of misrepresentation of lease terms, Bilmar argues that the district court abused its discretion in disallowing the DTPA amendment because defendants had agreed to permit amended pleadings. IFG and Inter-Regional respond that the agreement to permit amended pleadings was based on the representation that the amendments would be confined to housekeeping matters, to conform the pleadings to the evidence obtained during discovery but not to add new claims. Defendants' motion for a continuance, filed on the same day as the joint motion, sought additional time for discovery because the amendments added new counts.

■ For the district court to deny Bilmar's motion to amend to add a DTPA count, it had to determine that such an amendment was outside the scope of the agreed motion to permit amendments. Fed.R.Civ.P. 15(a); *Fern v. United States*, 213 F.2d 674, 677 (9th Cir.1954) (if the adverse party had consented to amend-

ment, the court has no control over the matter). From the record before us, that determination had to have been based on the court's acceptance of defendants' argument of the limited nature of the agreement to permit amendments. Bilmar's memorandum in opposition to defendants' motion for a continuance did not deny that new counts were not contemplated in the joint motion to permit amendments. Bilmar merely maintained that the addition of counts based on the DTPA and RICO should not have surprised defendants. Under these circumstances, the district court did not abuse its discretion in concluding that the joint motion did not extend to the DTPA claim.

■ Given that there was not an agreement to permit the amendment to allow the DTPA claim, Bilmar could amend only upon leave of court. Denial of that amendment was not an abuse of discretion. The motion to amend to include the DTPA claim was filed almost 10 months after Bilmar brought this action and notified defendants of its intent to amend to include a DTPA claim. Discovery had terminated on May 27 and trial was scheduled for July 8. In this instance, the denial of the motions to add a DTPA claim was not an abuse of discretion.

With respect to its other claims based on fraud in the inducement, Bilmar contends that it had no reason to assert these claims until defendants denied the validity of the put agreement—for the first time—in their motion for summary judgment filed on June 18. Because the right to purchase the rig was an allegedly critical factor in Bilmar's decision to enter into the agreement with defendants, Bilmar argues that this denial squarely raised the theory of fraudulent inducement. For this reason, Bilmar asserts that the district court abused its discretion in denying without explanation Bilmar's July 12 motion to amend its amended original complaint to add fraud, fraud in the inducement, and

---

**3.** Notice is generally required before filing an action for damages based on a DTPA violation.

Tex.Bus. & Comm.Code Ann. § 17.50A.

DTPA claims based on the asserted invalidity of the put agreement. Defendants do not respond to this argument.

 The district court order denying Bilmar leave to add fraud, fraudulent inducement, and DTPA claims provides that that denial was based on an oral order that the court made during the pre-trial conference with the parties. The appellant has the responsibility to prepare a statement of unreported proceedings for inclusion in the record on review, Fed.R.App.P. 10(c), even if that statement in this instance would provide that no reasons were given. A mere recital by counsel of what happened is not enough. *Stout v. Jefferson Co. Bd. of Educ.*, 489 F.2d 97, 98 (5th Cir.1974); *Lemley v. Christophersen*, 150 F.2d 291, 292 (5th Cir.1945) (discussing predecessor to Rule 10(c)). Bilmar has not provided this statement. We are therefore faced with the choice of either remanding for the purpose of supplementing the record with that statement or declining to consider this issue. Fed.R.App.P. 10(e). We choose to do the latter. Bilmar's assertion of surprise does not stand. As we have already noted, a transaction styled as a lease but having a purchase option is subject to the Texas usury statutes if the lessee has no realistic alternative but to exercise the option. Bilmar's original complaint refers to the put agreement and asserts that the lease is a loan. Defendants' answer denies these portions of Bilmar's complaint. This, along with Bilmar's opposition to defendants' motion for a continuance, Bilmar's repeated reliance on this issue in its original and reply brief, and the mature stage of this appeal persuade us not to grant leave to supplement the record. We therefore decline to consider Bilmar's argument that the district court abused its discretion in denying Bilmar leave to amend to add the fraud, fraudulent inducement, and DTPA claims.

## IV. *Attorneys' Fees and Expenses*

In its cross-appeal, IFG contends that the district court erred in denying its motion for attorneys' fees and expenses to the extent the latter were not included in its bill of costs.[4] IFG bases its argument on lease language authorizing IFG to recover its attorneys' fees and expenses incurred in litigation arising from disputes over the lease agreement.[5] IFG also claims entitlement to attorneys' fees and expenses based on 28 U.S.C. § 2202, which authorizes necessary or proper relief against an adverse party in a declaratory judgment action. Bilmar responds that IFG's notice of appeal was not timely; that the indemnity clause in the lease applied only to suits by third parties, not to actions between Bilmar and IFG; and that there is no statutory basis for the award of attorneys' fees and expenses.

Before we can reach the merits of IFG's argument, we must determine if its notice of appeal was timely. The district court's order that Bilmar take nothing and that defendants recover costs was docketed on August 27, 1985. Bilmar filed its notice of appeal on September 23. IFG served its motion for attorneys' fees and expenses on September 25. The order denying IFG's motion was docketed on November 4. IFG filed its notice of appeal on November 26. To determine if the notice of appeal was timely, we must consider whether the August 27 order was a final judgment and if IFG's motion for fees and expenses is a motion to amend judgment under Fed.R. Civ.P. 59(e), subject to that rule's ten-day requirement.

The first question for us is whether the district court's August 27 order not awarding attorneys' fees and nontaxable ex-

---

**4.** Inter-Regional does not join in this appeal.

**5.** The lease provides that:
[Bilmar] shall indemnify [IFG Leasing] against, and hold [IFG Leasing] harmless from, any and all claims, actions, suits, proceedings, costs, expenses, damages, and liabil-ities, including reasonable attorneys' fees arising out of, connected with, or resulting from the property subject to this lease, including without limitation the manufacture, selection, delivery, possession, use, operation or return of the property.

penses was a final judgment. A final judgment is one that "terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined." *St. Louis, Iron Mountain & Southern Railroad Co. v. Southern Express Co.*, 108 U.S. 24, 28–29, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883). This court has reasoned that an order awarding an unspecified amount of attorney's fees is not final when the fees are integral to the merits of the action. That is, when

> the attorney's fees are an integral part of the merits of the case and the scope of relief, they cannot be characterized as costs or as collateral and their determination is part of any final, appealable judgment.

*Holmes v. J. Ray McDermott & Co., Inc.*, 682 F.2d 1143, 1146 (5th Cir.1982), *cert. denied*, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983). We have accordingly determined that an order that awards attorney's fees relating to maintenance and cure in a Jones Act and general maritime case but that does not identify the amount is not final and appealable. *Id.* at 1148. Similarly, we have held that an award of contractual attorneys' fees in an amount to be fixed at a later date in a Mississippi action on a debt is not final and appealable until the amount of fees is fixed. *Oxford Prod'n Credit Ass'n v. Duckworth*, 689 F.2d 587, 588–89 (5th Cir.1982). More recently, we have held that an order awarding an unspecified amount of attorney's fees in an action under RICO is not final. *Alcorn Co., Miss. v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1164–65 (5th Cir.1984). Nor is an order final that awards an unspecified amount of attorney's fees in an action for breach of implied warranties of workmanlike performance. *Todd Shipyards Corp. v. Auto Transportation, S.A.*, 763 F.2d 745, 751 (5th Cir. 1985).

The facts before us differ from those in the cases cited above. In our case, the district court's August 27 order is silent on attorneys' fees and nontaxable expenses. It refers to costs only. In *Stacy v. Wil-liams*, 446 F.2d 1366, 1367 (5th Cir.1971), we treated such an order as final. We must, therefore, do the same today.

Given that the August 27 order was final, we must next consider whether IFG's motion for attorneys' fees and expenses should be treated as a motion to amend under Rule 59(e). If so, that motion would not toll the running of the time for filing a notice of appeal because it was not served within 10 days after entry of final judgment. Fed.R.App.P. 4(a)(4); Fed.R.Civ.P. 59(e). In *Stacy v. Williams*, 446 F.2d at 1367, we treated a post-judgment motion for attorney's fees in a declaratory judgment action as a motion to amend under Rule 59(e). Later, in *Knighton v. Watkins*, 616 F.2d 795 (5th Cir.1980), we again had to consider whether a post-judgment motion for attorney's fees should be subject to Rule 59(e). In *Knighton*, judgment was entered in an action involving a claim under 42 U.S.C. § 1983. The order made no provision for attorney's fees. More than ten days later, counsel filed a motion for attorney's fees. We concluded on appeal that that motion should not be subject to Rule 59(e). Noting that 42 U.S.C. § 1988 authorizes attorney's fees as part of the costs—to be awarded at the court's discretion but only to the prevailing party—we reasoned that attorney's fees would ordinarily be sought after the litigation. The request would not seek a change in judgment but only what was due because of judgment. *Id.* at 797. We distinguished *Stacy* on the grounds that the request in that case had been based on the opponent's bad faith in litigation and, under such circumstances, the fees were not to be treated as part of the costs awarded after litigation but should have been sought as part of the litigation itself. *Id.*

Shortly after we decided *Knighton*, the Supreme Court concluded that the approach taken in that case correctly identified whether a post-judgment motion for attorney's fees should be subject to Rule 59(e). *White v. N.H. Dept. of Employment Security*, 455 U.S. 445, 451–53, 102 S.Ct. 1162, 1166–67, 71 L.Ed.2d 325 (1982).

In *White*, the plaintiff sought an award of attorney's fees under 42 U.S.C. 1988 more than ten days after entry of a consent decree in a § 1983 suit. The defendant argued that the motion was not timely under Rule 59(e). The Court held that a post-judgment motion for attorney's fees under § 1988 was not subject to Rule 59(e) and, therefore, could be made more than ten days after entry of judgment. The Court reasoned that an award of fees under § 1988 was not integral to the main cause of action. Rather, the award was a collateral matter, independent of the merits of the case and uniquely separable from the cause of action to be proved at trial. *Id.*

■ Applying these principles to today's case, we treat IFG's motion for attorneys' fees and expenses as involving, in theory, two motions—one grounded on a contract right and the other based on 28 U.S.C. § 2202. With respect to recovery on the contract theory, we must determine if the contract provision is collateral to the merits of this action, a question of state law. *Oxford Prod'n Credit Ass'n*, 587 F.2d at 588–89. If collateral, the motion for fees and expenses is not subject to Rule 59(e).

As Bilmar points out, IFG's interpretation of the indemnification clause in the lease agreement, taken to its necessary conclusion, entitles IFG to attorneys' fees and expenses regardless of whether IFG prevails in an action against its lessee. In this critical respect, then, this case is much different from *Knighton* and *White*. Here, as in *Stacy*, an award of fees and expenses would be foreseeable regardless of the outcome of the action on the merits. We therefore conclude that, on IFG's contract theory, attorneys' fees and expenses are not merely collateral to the merits. The motion for those fees and expenses is subject to Rule 59(e). Because the motion was not served within 10 days after entry of final judgment, it did not toll the time for filing IFG's notice of appeal. That notice was therefore not timely.

■ With respect to IFG's theory of recovery under 28 U.S.C. § 2202, we conclude

that the motion for fees and expenses is not subject to Rule 59(e). Section 2202 makes no express provision for attorney's fees or expenses. In this respect, a motion for fees and expenses presents an even stronger case for concluding that Rule 59(e) does not apply than the Supreme Court faced in *White*. Moreover, as in *White*, an award under § 2202 cannot be made until after a declaratory judgment has issued under § 2201. 455 U.S. at 451–52, 102 S.Ct. at 1166–67 (fact that § 1988 authorizes attorney's fees only to the prevailing party means that request cannot come until a party has prevailed). *Compare Alcorn Co., Miss. v. U.S. Interstate Supplies, Inc.*, 731 F.2d at 1164–65 (fact that statute authorizing fees also provided cause of action supported conclusion that fees integral to merits). For these reasons, we conclude that a motion for fees and expenses under 28 U.S.C. § 2202 is collateral to an action, not precluding issuance of a final, appealable judgment on the merits. IFG's motion for attorneys' fees and expenses under § 2202 is not subject to the ten day requirement of Rule 59(e); IFG's notice of appeal on this theory of recovery was timely.

■ Having concluded that IFG's notice of appeal here was timely, we must determine whether the district court abused its discretion in denying IFG's motion for fees and expenses. It did not. Contrary to IFG's assertions, Bilmar's suit did not necessarily force it to seek a separate declaration of the lease's validity. Bilmar claimed that the lease was a usurious loan; IFG answered, denying that it was either a loan or usurious and counterclaimed for a declaration that it was not a loan or, if a loan, not usurious. The declaratory relief it sought was therefore explicit in the resolution of Bilmar's action on the merits. The district court did not abuse its discretion in denying IFG's motion for fees and expenses.

## V. *Conclusion*

The district court's order that Bilmar take nothing is AFFIRMED, although we

reach this result for reasons different from those advanced by the trial court. The district court did not abuse its discretion in denying IFG's motion for attorneys' fees and expenses.